1   ROBERT A. JACOBS (SBN 160350)
    E-mail:  RJacobs@manatt.com
2   EMIL PETROSSIAN (SBN 264222)
    E-mail:  EPetrossian@manatt.com
3   MANATT, PHELPS & PHILLIPS, LLP
    11355 West Olympic Boulevard
4   Los Angeles, California 90064
    Telephone:  (310) 312-4000
5   Facsimile:  (310) 312-4224

6   *Attorneys for Defendants* Usher Raymond IV,
    Jermaine Dupri (f/k/a Jermaine Dupri Mauldin),
7   EMI April Music Inc., UR-IV Music, Inc., So
    So Def Productions, Inc. (sued erroneously as
8   "So So Def Recordings, Inc."), W.B.M. Music
    Corp., Bryan Michael Cox and Babyboys Little
9   Publishing Company

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12

13  ERNEST LEE STRAUGHTER,            Case No. CV 08-2170 CAS (CWx)

14          Plaintiff,                Hon. Christina A. Snyder
                                      Courtroom No. 5
15          vs.

16  USHER RAYMOND, IV et al.,         **REPLY MEMORANDUM OF
                                      POINTS AND AUTHORITIES IN
17          Defendants.               SUPPORT OF DEFENDANTS'
                                      MOTION FOR SUMMARY
18                                    JUDGMENT OR, IN THE
                                      ALTERNATIVE, FOR PARTIAL
19                                    SUMMARY JUDGMENT**

20                                    Hearing Date:     April 18, 2011
                                      Hearing Time:     10:00 a.m.
21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  ARGUMENT ........................................................................................... 1

    A.   Plaintiff's Request That The Court Delay Again The Resolution Of This Nearly Three-Year Old Case Must Be Rejected .................... 1

    B.   Defendants Are Entitled To Summary Judgment Because Plaintiff Has Failed To Rebut Their Case-Ending Unclean Hands Defense ................................................................................. 2

    C.   Defendants Also Are Entitled To Summary Judgment Because Plaintiff Is Unable To Rebut Their Showing That He Has Not Adduced Any Evidence That Burn's Creators Had Access To Pain.................................................................................................... 4

        1.   Plaintiff's Recycled Hearsay Theories Do Not Establish Access As A Matter Of Law........................................................ 5

        2.   Plaintiff's Reel Tight Access Theories Do Not Create A Triable Issue Of Fact ....................................................... 6

            a.   Plaintiff's Claims Regarding A Supposed "Long History Of Personal Contacts And Collaborations" Between Raymond And Reel Tight Have No Evidentiary Support........................................................ 6

            b.   Plaintiff's Assertion That Raymond And The Reel Tight Members Have "Common Backgrounds Growing Up" Also Lacks Any Record Support.............. 7

            c.   Plaintiff's Failure And Inability To Challenge The Group Members' And Raymond's Credibility Doom His Theories ........................................... 9

        3.   The Warren G Access Theories Are Wholly Speculative, Contrary To Law And Foreclosed By The Record .................. 9

            a.   The Court Should Strike And/Or Disregard Most Of Plaintiff's Supposed Warren G Access "Evidence"................................................................. 10

            b.   The Warren G Theories Satisfy None Of The Requirements  For Third-Party Intermediary Access Claims ............................................................. 11

**REPLY MEM. OF P. & A IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**
(continued)

Page

   c. Plaintiff's Characterization Of The Purported Relationship Between Warren G And Raymond Is Utterly Baseless ................................................................. 13

   d. Plaintiff's Characterization Of The Purported Relationship Between Warren G And Dupri Also Lacks Any Foundation ..................................................... 14

   e. Plaintiff's Failure And Inability To Challenge Warren G's, Raymond's And Dupri's Credibility Bar His Theories ................................................................. 15

  4. Plaintiff Cannot Raise A Triable Issue Of Fact About Access Based On The Relationship Among The Writer Defendants ..................................................................... 16

  5. Plaintiff's Wide Dissemination Theory Fails Because It Has No Foundation Whatsoever ................................................. 17

 D. Summary Judgment Is Warranted Because Plaintiff Has Not Come Forth With Any Evidence Rebutting Defendants' Showing That He Cannot Satisfy The Extrinsic Test ......................... 18

  1. Plaintiff Improperly Attempts To Create An Issue Of Fact By Offering A Sham Declaration From Dr. Keyes ................. 19

  2. Plaintiff's Conclusory Assertions That Pain And Burn Share 16 Similarities Do Not Create An Issue Of Fact ........... 20

  3. Plaintiff's Prior Art Arguments Misapprehend That He Bears The Burden Of Establishing Originality ........................ 24

III. CONCLUSION ............................................................................ 25

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

-ii-

**REPLY MEM. OF P. & A IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1

# TABLE OF AUTHORITIES

2

3

**Page**

## CASES

4

*Arnstein v. Porter*,
5
    154 F.2d 464 (2d Cir. 1946). (Opp. 21) ..................................................4, 5, 12, 21

6

*Art Attacks Ink, LLC v. MGA Entm't, Inc.*,
    2007 WL 1989631 (S.D. Cal. July 2, 2007), *aff'd*, 581 F.3d 1138 (9th Cir.
7
    2009) ................................................................................................................8

8

*Bouchat v. Baltimore Ravens, Inc.*,
    241 F.3d 350 (4th Cir. 2000) .........................................................................12
9

10

*Burrell v. Star Nursery, Inc.*,
    170 F.3d 951 (9th Cir. 1999) ........................................................................20

11

*Celotex Corp. v. Catrett*,
12
    477 U.S. 317 (1986) ......................................................................................25

13

*Cermetek, Inc. v. Butler Avpak, Inc.*,
    573 F.2d 1370 (9th Cir. 1978) .......................................................................11
14

15

*Curl v. I.B.M. Corp.*,
    517 F.2d 212 (5th Cir. 1975) .....................................................................9, 15

16

*Eaton v. Nat'l Broad. Co.*,
    972 F. Supp. 1019 (E.D. Va. 1997), *aff'd*, 145 F.3d 1324 (4th Cir. 1998)....9, 15
17

18

*Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*,
    764 F.2d 604 (9th Cir. 1985) .....................................................................9, 15

19

*Gable v. National Broad. Co.*,
20
    727 F. Supp. 2d 815 (C.D. Cal. 2010)........................................................4, 11

21

*Idema v. Dreamworks, Inc.*,
    162 F. Supp. 2d 1129 (C.D. Cal. 2001)..........................................................23

22

*Imperial Resid. Design, Inc. v. Palms Dev. Group, Inc.*,
23
    70 F.3d 96 (11th Cir. 1995) .............................................................................4

24

*Jones v. Owens-Corning*,
    69 F.3d 712 (4th Cir. 1995) ...........................................................................16
25

26

*Jorgensen v. Careers BMG Music Publ'g*,
    2002 WL 1492123 (S.D.N.Y. July 11, 2002)...................................................8

27

*Jorgensen v. Epic/Sony Records*,
28
    351 F.3d 46 (2d Cir. 2003) ..............................................................................4

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

-iii-

REPLY MEM. OF P. & A IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1
2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3
4

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
   617 F.3d 1146 (9th Cir. 2010)........................................................3, 4

5

*Kamar Int'l, Inc. v. Russ Berrie and Co.*,
   657 F.2d 1059 (9th Cir. 1981)............................................................12

6
7

*Kennedy v. Allied Mut. Ins. Co.*,
   952 F.2d 262 (9th Cir. 1991)..............................................................20

8
9

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984)............................................................23

10

*Maxtone-Graham v. Burtchaell*,
   803 F.2d 1253 (2d Cir. 1986).............................................................4

11
12

*Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*,
   290 F.3d 98 (2d Cir. 2002).................................................................3

13

*Meraz v. Jo-Ann Stores, Inc.*,
   2004 WL 882458 (C.D. Cal. Apr. 2, 2004)......................................16

14
15

*Meta-Film Assocs., Inc. v. MCA Inc.*,
   586 F. Supp. 1346 (C.D. Cal. 1984)............................................11, 12

16
17

*Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*,
   701 F.2d 95 (9th Cir. 1983)............................................................9, 15

18

*Orr v. Bank of Am., NT & SA*,
   285 F.3d 764 (9th Cir. 2002)..............................................................20

19
20

*Rice v. Fox Broad. Co.*,
   148 F. Supp. 2d 1029 (C.D. Cal. 2001).............................12, 13, 20, 24

21

*Rice v. Fox Broad. Co.*
   330 F.3d 1170 (9th Cir. 2003)............................................................12

22
23

*Rinieri v. Scanlon*,
   254 F. Supp. 469 (S.D.N.Y. 1966)....................................................16

24
25

*Saregama India Ltd. v. Mosley*,
   687 F. Supp. 2d 1325 (S.D. Fla. 2009)................................................4

26

*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008)..........................................................7, 10

27
28

*Sid & Marty Krofft Tel. Prods. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977)............................................................24

1

**TABLE OF AUTHORITIES**

2

(continued)

**Page**

3

*Smith v. Little, Brown & Co.*,

4

245 F. Supp. 451 (S.D.N.Y. 1965) ..................................................... 12

5

*Stewart v. Wachowski*,

574 F. Supp. 2d 1074 (C.D. Cal. 2005) ............................................. 24

6

*Swirsky v. Carey*,

7

376 F.3d 841 (9th Cir. 2004). (Br. 7-11, 21-25) ......................... passim

8

*T-Peg, Inc. v. Vermont Timber Works, Inc.*,

459 F.3d 97 (1st Cir. 2006) ............................................................... 12

9

*Three Boys Music Corp. v. Bolton*,

10

212 F.3d 477 (9th Cir. 2000) ....................................................... 23, 24

11

*Tisi v. Patrick*,

12

97 F. Supp. 2d 539 (S.D.N.Y. 2000) ................................................. 20

13

*Towler v. Sayles*,

76 F.3d 579 (4th Cir. 1996) ............................................................... 12

14

*Trinsey v. K. Hovnanian at Upper Merion, Inc.*,

15

1994 WL 249789 (E.D. Pa. June 6, 1994) ........................................ 16

16

*U.S. v. Armijo*,

5 F.3d 1229 (9th Cir. 1993) ................................................................. 6

17

*U.S. v. Tafollo-Cardenas*,

18

897 F.2d 976 (9th Cir. 1990) ............................................................... 6

19

**STATUTES**

20

37 C.F.R. § 202.3(b)(9)(ii) n. 5 ............................................................. 3

21

37 C.F.R. § 202.3(b)(11)(ii) n. 5 ........................................................... 3

22

Fed. R. Civ. P. 56(d) ............................................................................. 2

23

Fed. R. Civ. P. 56(e) ........................................................................... 11

24

Fed. R. Evid. 702 ................................................................................ 18

25

Fed. R. Evid. 801(d)(1)(A) ............................................................. 5, 6

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**REPLY MEM. OF P. & A IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.   PRELIMINARY STATEMENT

Plaintiff opposition is comprised of random access theories bound together by speculation and conjecture and a laundry list of supposed similarities that is belied by his purported expert's own reports and testimony.  Plaintiff's papers confirm that, instead of formulating conclusions based on the record, he has fictionalized the record to manufacture support for his conclusions.  Plaintiff has not adduced a shred of access evidence or identified a single actionable similarity in the songs at issue.

In short, Plaintiff's opposition does nothing, except confirm that he has no case.  He claims to own 100 percent of the copyright in *Pain*, but is unable to offer any admissible evidence to rebut Defendants' showing that he owns no more than 13 percent.  He argues that *Burn*'s creators had access to *Pain* in various ways, but his theories lack evidentiary support and are foreclosed by the record and/or controlling law.  He offers a declaration from his purported expert, Dr. Keyes, to show that she understood and correctly applied the terms "striking similarity" and "substantial similarity," but her declaration, which flatly contradicts her clear and unequivocal deposition testimony on these issues, is a sham because its only conceivable purpose is to create an issue of fact.  He maintains that *Pain* and *Burn* supposedly have 16 striking or substantial similarities, but Defendants' expert's analysis of and Dr. Keyes' descriptions of and concessions about them confirm that they are illusory because their constituent elements and musical expression are vastly different and because many of them are based solely on unprotected abstract ideas.  Plaintiff, thus, has failed to establish a triable issue, entitling Defendants to summary judgment.

## II.   ARGUMENT

### A.   Plaintiff's Request That The Court Delay Again The Resolution Of This Nearly Three-Year Old Case Must Be Rejected

In response to Defendants' proof that he never produced any admissible evidence of the work that is the subject of the Registration, Plaintiff cites his own declaration and discovery response in which he states that he has "attach[ed] a true and correct copy of the audio cassette that was deposited with the copyright office in

1   conjunction with [his registration for *Reasons*]."  (Opp. Brief (Dkt. 231) ("Opp.")

2   14-15; Straughter Dec. (Dkt. 228) ¶¶ 31-34, Exh. H at 4)  Because Plaintiff cannot

3   locate the certified duplicate of the deposit copy that his former attorneys supposedly

4   obtained from the Copyright Office, he requests that the Court delay ruling on any

5   issue arising from his failure to produce pursuant to Fed. R. Civ. P. 56(d).  (Opp. 14)

6       Plaintiff's discovery response and declaration testimony do not warrant yet

7   another delay in resolving this nearly three-year old case.  <u>First</u>, Defendants never

8   received the copy referenced in that response.  *See* Reply Declaration of Robert A.

9   Jacobs ¶ 3; Declaration of Peter J. Anderson ¶ 4.  <u>Second</u>, the declaration testimony

10  is irrelevant because Plaintiff does not have personal knowledge about the purported

11  copy since he did not prepare it or witness its preparation.  <u>Third</u>, even if the Court

12  were to assume that *Pain* and the *Reasons* deposit copy are the same (and it should

13  not), no delay would be justified because Defendants still would be entitled to

14  summary judgment on ***five other grounds***:  (1) unclean hands ; (2) no admissible

15  expert testimony; (3) no issue of fact on access; (4) no issue of fact on substantial

16  similarity; and (5) no issue of fact on striking similarity.  (*See* Defendants' Moving

17  Brief (Docket "Dkt." 212-1) ("Br.") 3-12, 15-18, 20-25)

18  **B.    <u>Defendants Are Entitled To Summary Judgment Because Plaintiff
        Has Failed To Rebut Their Case-Ending Unclean Hands Defense</u>**

19

20      As our moving papers show, (1) correspondence from Plaintiff's former

21  attorney and the record label that released the Album, (2) the Album's credits and (3)

22  the testimony of the attorney, the author of the record label's letter and the two Reel

23  Tight members (Long and Rice) whose depositions Plaintiff took demonstrate that

24  Plaintiff owns no more than 13 percent of the *Pain* copyright.  (Br. 4-5, 15-18)

25  Thus, Plaintiff's misrepresentations to the Court and Defendants that he alone owns

26  the copyright constitute unclean hands and, as such, bar his claim.  (*Id.*)

27      In his opposition papers, Plaintiff ignores the substance of these arguments

28  and tries to distract the Court by highlighting a purported discrepancy in Long's and

1  Rice's deposition testimony concerning whether Reel Tight moved to Los Angeles in

2  1996 or 1997.  (Opp. 15)  Plaintiff also asks the Court – without citing any authority

3  – to brush aside the unclean hands defense and the incontrovertible evidence that he

4  owns no more than 13 percent of the *Pain* copyright because his copyright

5  registration somehow forecloses the group from owning any part of the work and

6  because Defendants supposedly lack standing to challenge his ownership rights.

7  (Opp. 15-16)  These arguments are baseless.

8       First, the purported discrepancy in the deposition testimony is a red herring.

9  Irrespective of whether the group moved to Los Angeles in 1996 or 1997, Long and

10  Rice both testified that the group wrote *Pain* in Chattanooga before the move and,

11  thus, before meeting Plaintiff in 1998.  (Long Tr. 20:12-23:5; 99:2-19; Rice Tr.

12  58:16-60:16; Jacobs Dec. ¶¶ 8-9, Exhs. F-G)).  In any event, even if the group did

13  not write *Pain* before the move, Plaintiff has adduced ***no evidence*** to rebut

14  Defendants' showing that he owns no more than 13 percent of its copyright.

15       Second, Plaintiff's copyright registration is completely irrelevant.  In short,

16  that document has no bearing on the Reel Tight members' interest in *Pain* since, as

17  co-authors, they have an absolute right to obtain a separate registration for the work

18  in their own names as copyright claimants.  *E.g., Medforms, Inc. v. Healthcare*

19  *Mgmt. Solutions, Inc*., 290 F.3d 98, 113-14 (2d Cir. 2002) ("The [Copyright Office's

20  regulations] allow . . . co-author[s] to obtain a copyright registration in [their] name

21  after another author previously obtained a registration in his or her name alone.")

22  (citing 37 C.F.R. § 202.3(b)(9)(ii) n. 5 (now § 202.3(b)(11)(ii) n. 5)).  Thus,

23  Plaintiff's registration does not create an issue of fact concerning his unclean hands.

24       Third, the circumstances here are not remotely close to those in the cases

25  applying the standing limitation that Plaintiff urges.  As a threshold matter, courts

26  only recognize that limitation when copyright defendants challenge copyright

27  plaintiffs' ownership rights arising from a work for hire relationship, *see Jules*

28  *Jordan Video, Inc. v. 144942 Canada Inc*., 617 F.3d 1146, 1157 (9th Cir. 2010), or

1  assignment, *see Imperial Resid. Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96,

2  99 (11th Cir. 1995) (*cited with approval in id.*), neither of which is at issue here.  In

3  addition, even in those instances, courts require a showing that (1) "there is no

4  dispute" between or among the potential copyright owners **and** (2) all such potential

5  owners "are plaintiffs to the lawsuit."  *Jules Jordan*, 617 F.3d at 1157; *accord*

6  *Imperial Resid.*, 70 F. 3d at 99.  Plaintiff clearly does not meet either condition here

7  because the members of Reel Tight are not plaintiffs and because his assertions of

8  sole authorship and ownership are at odds with their agreement with them.  *Cf.*

9  *Saregama India Ltd. v. Mosley*, 687 F. Supp. 2d 1325, 1334-35 (S.D. Fla. 2009)

10  (despite third-party's testimony that it had assigned plaintiff the copyright in the

11  work at issue, defendant could challenge plaintiff's ownership rights from the

12  assignment because, among other reasons, the third-party was not a plaintiff).

13       Plaintiff, thus, has failed to rebut Defendants' unclean hands defense.

14  Summary judgment is warranted on this basis alone.

15      **C.**   **Defendants Also Are Entitled To Summary Judgment Because

16          Plaintiff Is Unable To Rebut Their Showing That He Has Not

        Adduced Any Evidence That *Burn*'s Creators Had Access To *Pain***

17       "'In order to support a claim of access, a plaintiff must offer significant,

18  affirmative and probative evidence.'"  *Gable v. National Broad. Co.*, 727 F. Supp. 2d

19  815, 824 (C.D. Cal. 2010) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51

20  (2d Cir. 2003)) (other quotations & citations omitted).  Defendants' moving papers

21  establish that Plaintiff cannot point to **any** evidence – let alone the "significant,

22  affirmative and probative evidence" required to avoid summary judgment – that

23  Dupri, Raymond or Cox (collectively, "Writer Defendants") had access to *Pain*

24  before they wrote *Burn*.  (Br. 6-7, 22-23)

25       In response, Plaintiff asks the Court to apply to its access inquiry the summary

26  judgment standard in *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946).  (Opp. 21)

27  This standard, however, was abrogated long ago.  *See Maxtone-Graham v.*

28  *Burtchaell*, 803 F.2d 1253, 1258 n.5 (2d Cir. 1986) ("The days of *Arnstein v. Porter*

1   . . . are behind us.") (citations omitted); *McRae v. Smith*, 968 F. Supp. 559, 561 (D.

2   Colo. 1997) ("[I]n copyright cases, although the traditional rule, based upon the

3   influential 1946 case *Arnstein v. Porter* . . . was to deny summary judgment where

4   there was the slightest doubt as to fact, that rule had been replaced with the ordinary

5   rule of summary judgment:  once the moving party has properly supported his

6   summary judgment motion, the nonmoving party must rebut with significant

7   evidence of the elements of the claim.") (quotations & citation omitted).

8        Plaintiff also rehashes the hearsay theories already addressed by Defendants

9   and bombards the Court with a mass of other speculative and otherwise unsupported

10  theories, the crux of which is that (1) Reel Tight might have given Raymond a copy

11  of *Pain*; (2) Warren G might have given Raymond or Dupri a copy; (3) one or more

12  of the Writer Defendants might have given a copy to each other; and (4) the Album

13  supposedly was widely disseminated.  As we now demonstrate, the record not only

14  lacks any support for any of these theories, it also forecloses each of them.

15              **1.    Plaintiff's Recycled Hearsay Theories Do**
16                    **Not Establish Access As A Matter Of Law**

17       Plaintiff claims that "common friends" supposedly told him "that copies of

18  [the Album] were . . . given to [Raymond] and . . . Dupri in 1998."  (Opp. 22)

19  Plaintiff's declaration (*see* Straughter Dec. ¶¶ 38, 39) confirms that this claim relies

20  on the same purported hearsay statements that Defendants previously showed are

21  inadmissible and, thus, insufficient to create an issue of fact.  (Br. 6, 22)  Plaintiff

22  makes no attempt to explain how Rice's alleged statement could be admissible, but

23  half-heartedly contends in a footnote – without any explanation or support – that

24  Warren G's is admissible as a prior inconsistent statement because Defendants

25  submitted a declaration from Warren G.  (Opp. 19 n.1)  This is baseless.

26       Plaintiff's contention is contrary to Ninth Circuit law and the plain language of

27  Fed. R. Evid. 801(d)(1)(A), which make clear that prior inconsistent statements are

28  limited to statements made under oath, which Warren G's (and Rice's) purported

statement(s) to Straughter plainly is/are not.  *See U.S. v. Armijo*, 5 F.3d 1229, 1232 (9th Cir. 1993) ("[Witness'] prior inconsistent statement [to law enforcement officials] was inadmissible under Rule 801(d)(1)(A) . . . because it was not given under oath."); *U.S. v. Tafollo-Cardenas*, 897 F.2d 976, 980 (9th Cir. 1990) (same). Because the statements do not satisfy Rule 801(d)(1)(A) and Plaintiff has made no attempt to show (nor can he) that they fall under any hearsay exception, they are inadmissible.  Plaintiff, therefore, cannot use them to avert summary judgment.

### 2.   Plaintiff's Reel Tight Access Theories Do Not Create A Triable Issue Of Fact

Plaintiff claims that Raymond had access to *Pain* through Reel Tight in light of their purported "long history of personal contacts and collaborations . . . over a period of ten years" and "common backgrounds growing up" in Chattanooga.  (Opp. 23 (citations omitted))  As explained below, these theories must be rejected because (1) they have no support in and are barred by the record; and (2) Plaintiff has not raised a triable issue that Raymond and the Reel Tight members lied when they testified that the members did not give Raymond a copy of *Pain* or the Album.

a.   Plaintiff's Claims Regarding A Supposed "Long History Of Personal Contacts And Collaborations" Between Raymond And Reel Tight Have No Evidentiary Support

Plaintiff has not adduced any evidence that Raymond and Reel Tight ever collaborated on anything.  Similarly, the supposed "long history of personal contacts" between Raymond and the group is pure fiction because the evidence upon which Plaintiff relies merely shows that (1) Raymond recalled having met in passing one or more group members on *one* occasion prior to 1993 and thought he "probably" met in passing one or more of them again on *one* occasion after 1993 (Raymond Tr. 64-75 (Jacobs Reply Dec. ¶ 6, Exh. C); and (2) Reel Tight member Long thought that Raymond was in a group in the late 1980s (when Raymond was approximately 10 or 11 years old) that "maybe" practiced on two occasions in the same location as some of the Reel Tight members and that, at some unspecified point in time, the group crossed paths and shook hands with – but did "not formally meet"

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**REPLY MEM. OF P. & A IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1   – Raymond.  (*See* Long Tr. 61-65 (Jacobs Reply Dec. ¶ 8, Exh. E))  By no stretch of

2   the imagination does this scant evidence reflect a "long history of personal contacts"

3   between Raymond and Reel Tight.  Plaintiff's "long history" theories, therefore,

4   have no evidentiary basis whatsoever.

5              b.      Plaintiff's Assertion That Raymond And The Reel Tight
                       Members Have "Common Backgrounds Growing Up"
6                      Also Lacks Any Record Support

7         Plaintiff's "common backgrounds" theory is fatally defective for several

8   reasons.  <u>First</u>, the Court should strike and/or disregard the portions of Plaintiff's

9   declaration – Straughter Dec. ¶¶ 56-58, Exh. S – relied on to substantiate this theory

10  because he admittedly has no personal knowledge about the underlying matter, *see*

11  Straughter Tr. 143:17-20 ("[I have no] personal knowledge one way or the other if,

12  in fact, the members of Reel Tight have a personal relationship of any kind with

13  [Raymond].") (Jacobs Reply Dec. ¶ 4, Exh. A), and because, irrespective of this

14  admission, he has not shown that he has such knowledge.  *See Shakur v. Schriro*, 514

15  F.3d 878, 889 (9th Cir. 2008) (rejecting affidavit submitted in connection with

16  summary judgment that did not "affirmatively show personal knowledge of specific

17  facts").  Moreover, the Exhibit S documents offered for these issues are inadmissible

18  because they are hearsay and not authenticated.

19        <u>Second</u>, besides the above evidentiary infirmities, Plaintiff's conclusory

20  arguments about Raymond's and the Reel Tight members' upbringing distort the

21  facts in an effort to manufacture similarities in their backgrounds:

22  • Plaintiff's claim that Raymond is of "similar age" as the group members (Opp.
       23) is baseless because Raymond is nearly seven years younger than Rice and
23     almost four years younger than Long, the only group members about whom
       Plaintiff adduced evidence.  (Raymond Tr. 7:12-14; Rice Tr. 12:19-21; Long
24     Tr. 6:22-23 (Jacobs Reply Dec. ¶¶ 6-8, Exhs. C-E ));

25  • Plaintiff's argument that Raymond and members of Reel Tight went to the
       same elementary and junior high schools in Chattanooga (Opp. 23) is
26     misleading and irrelevant because, while Raymond attended Orchard Knob for
       a "short time" (Raymond Tr. 53:1-17) – the same elementary school as Rice
27     (Rice Tr. 17:16-18) – and Dalewood Middle School (Raymond Tr. 53:18-23)
       – the same middle school as Long (Long Tr. 13:9-13) – the seven-year age
28

1  difference between Raymond and Rice and Long's testimony (Long. Tr. 61:24
2  – 62:3) confirm that Raymond did not go to school with them.  (Jacobs Reply
   Dec. ¶¶ 6-8, Exhs. C-E);

3  • Plaintiff's suggestion that Raymond and members of Reel Tight both sang in
4     "their local church and school choirs" (Opp. 23) is similarly misleading and
      irrelevant because, while Raymond sang in the St. Elmo Missionary Baptist
5     Church choir (Raymond Tr. 54:19-55:14), Long did not sing in school choir
      (Long Tr. 15:20-17:10) and Plaintiff adduced **no** evidence that Rice sang in
6     the St. Elmo choir, that Long sang in any church choir or that Long or group
      members Robert Torrence or Danny Johnson sang in any church or school
7     choirs.  (Jacobs Reply Dec. ¶¶ 6, 8, Exhs. C, E)

8  • Plaintiff's references to Raymond and members of Reel Tight both "spending
      time in Atlanta," "being members of musical groups" and "performing in
9     talent shows" (Opp. 23) are meaningless because thousands of other people in
      Atlanta could be categorized similarly and because there is no evidence that
10    Raymond ever saw the band members there, was in a musical group with them
      or even participated in the same talent shows as they did.
11

12 Plaintiff, therefore, has not adduced any evidence – let alone raised an issue of fact –

13 that Raymond and the Reel Tight members had "common backgrounds growing up."

14      Third, even if Plaintiff were able to make such a showing (and he cannot), it

15 would be entirely irrelevant because the record incontrovertibly establishes that

16 Raymond moved from Chattanooga to Atlanta in 1993 (Raymond Tr. 67:24-68:2;

17 Raymond Am. Interrog. Resp. No. 5 (Jacobs Reply Dec. ¶¶ 6, 9, Exhs. C, F)) – **five**

18 **years before** Plaintiff claims that he wrote *Pain*.  In addition, Plaintiff adduced no

19 evidence of an ongoing relationship between Raymond and Reel Tight when Plaintiff

20 speculates that group might have given Raymond a copy of *Pain*.  Thus, Plaintiff's

21 contention that Raymond had access to *Pain* through Reel Tight is insufficient as a

22 matter of law.  *See Art Attacks Ink, LLC v. MGA Entm't, Inc.*, 2007 WL 1989631, at

23 *2 (S.D. Cal. July 2, 2007) ("the geographic proximity of [defendants'] work and

24 residence . . . near and around Los Angeles to the fairs in Southern California at

25 which [Plaintiff] exhibited [the allegedly infringed] work" is insufficient to establish

26 access), *aff'd*, 581 F.3d 1138 (9th Cir. 2009); *Jorgensen v. Careers BMG Music*

27 *Publ'g*, 2002 WL 1492123, at *4 (S.D.N.Y. July 11, 2002) ("Plaintiff's allegations

28 that the writers of [the allegedly infringing song] and the writers of other hit songs

1  allegedly copied his work simply because they work and live in the same

2  environment are wholly speculative.").

3          c.      Plaintiff's Failure And Inability To Challenge The Group
                   Members' And Raymond's Credibility Doom His Theories

4       All four members of Reel Tight and Raymond have confirmed that they did

5  ***not*** give him a copy of *Pain* or the Album.  *See* Rice Declaration at 2 (Dkt. 212-38);

6  Raymond Declaration ¶¶ 4-5 (Dkt. 212-34); Declaration of Reginald Long ¶ 2;

7  Declaration of Danny Johnson ¶ 2; Declaration of Robert Torrence ¶ 2.  Plaintiff

8  effectively asks the Court to find that the group members and Raymond are lying,

9  even though Plaintiff has not identified a single ***fact*** that raises even a remote

10  question about their credibility.  Plaintiff's failure to come forth with any such

11  evidence is fatal to his Reel Tight theories.  *See Frederick S. Wyle Prof'l Corp. v.*

12  *Texaco, Inc.*, 764 F.2d 604, 608-09 (9th Cir. 1985) ("Neither a desire to cross-

13  examine an affiant nor an unspecified hope of undermining his or her credibility

14  suffices to avert summary judgment, unless other evidence about an affiant's

15  credibility raises a genuine issue of material fact.  The [trial court properly granted

16  summary judgment because the non-moving party] failed to offer any evidence that

17  the affiants were untrustworthy and failed to demonstrate the existence of a material

18  issue of fact concerning their credibility.") (citing *Nat'l Union Fire Ins. Co. v.*

19  *Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983)); *Curl v. I.B.M. Corp.*, 517 F.2d

20  212, 214 (5th Cir. 1975) (same); *cf. Eaton v. Nat'l Broad. Co.*, 972 F. Supp. 1019,

21  1024 (E.D. Va. 1997) ("a copyright plaintiff cannot base her opposition to summary

22  judgment entirely on the hope that a fact finder will disbelieve the persons who have

23  submitted affidavits on issues of access"), *aff'd*, 145 F.3d 1324 (4th Cir. 1998)

24  (table).  The Court should reject Plaintiff's Reel Tight theories on this basis alone.

25          **3.**      **The Warren G Access Theories Are Wholly Speculative,**
               **Contrary To Law And Foreclosed By The Record**

26

27       Plaintiff speculates that Warren G is a third-party intermediary through whom

28  the Writer Defendants might have had access to *Pain*.  (Opp. 19)  Plaintiff elected

1   not to take Warren G's deposition and attempts to circumvent this strategic decision

2   through his own unsupported declaration testimony and blatant mischaracterizations

3   concerning Warren G's and Dupri's purported "numerous, substantial and direct"

4   connections during the period 1997-1999 and the supposed "long history of personal

5   contacts and collaborations" among Warren G, Dupri and Raymond.  (Opp. 19 n.1,

6   23 (citations omitted))  As discussed below, these theories must be rejected because

7   (1) most of the purported evidence on which they rely is inadmissible; (2) Plaintiff

8   has adduced no evidence – as he must to create a triable issue for third-party

9   intermediary access – that Warren G had supervisory responsibility for *Burn*, worked

10  with the Writer Defendants at the time of *Burn*'s creation or contributed ideas or

11  material to *Burn*; (3) the theories have no support in and are belied by the record; and

12  (4) Plaintiff has not raised a triable issue that Warren G, Raymond or Dupri lied

13  when testifying that Warren G did not give them a copy of *Pain* or the Album.

14                    a.    The Court Should Strike And/Or Disregard Most Of
                           Plaintiff's Supposed Warren G Access "Evidence"
15

16          Plaintiff relies on his own self-serving declaration testimony and information

17  gleaned from the Internet to establish Warren G's supposed "connections" and

18  "personal contacts and collaborations" with Dupri and/or Raymond.  (Opp. 19 n.1,

19  23; Straughter Dec. ¶¶ 39, 54-55, Exhs. I, J, L-R)  Such evidence is inadmissible.

20          First, Plaintiff has no personal knowledge and, therefore, is not competent to

21  testify about such matters.  *See Shakur*, 514 F.3d at 889.  The most glaring example

22  of these problems is Plaintiff's declaration testimony concerning one of the two

23  collaborations between Dupri and Warren G – the song *Protector's Of 1472*

24  ("*Protector's*") on Dupri's album *Life In 1472*.  He states that he "*understand[s] that*

25  *the album . . . was produced in Dupri's studio in . . . Atlanta . . . and that Warren G*

26  *had been there.*"  (Straughter Dec. ¶ 39 (emphasis added))  Under Ninth Circuit law,

27  "facts alleged on 'understanding' like those based on 'belief' or on 'information and

28  belief,' are not sufficient to create a genuine issue of fact" because they are not based

on personal knowledge.  *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978) (citations omitted); *see also L.H. v. Schwarzenegger*, 519 F. Supp. 2d 1072, 1078 (E.D. Cal. 2007) ("An affiant who has not established the basis of his or her knowledge [fails] to meet the requirements of Fed[.] R[. Civ. P.] 56(e) [because] it is impossible to evaluate potential hearsay implications of the statements in the affidavit without the required personal knowledge foundation.") (internal alterations, quotations & citation omitted).  The Court, therefore, should strike and/or disregard Plaintiff's declaration testimony on this and all related issues.

Second, Plaintiff bases much of his testimony regarding Warren G on hearsay statements by undisclosed authors of the Wikipedia and other Internet print-outs cited in and attached to his declaration, most of which documents also are not authenticated.  (Straughter Dec. ¶¶ 55(a)-(h), Exhs. I, J, L, M, O-R)  The Court should strike and/or disregard these documents also because they are inadmissible.

> b.   The Warren G Theories Satisfy None Of The Requirements For Third-Party Intermediary Access Claims

In order to establish access through Warren G, Plaintiff must demonstrate that Warren G and the Writer Defendants "occupy positions such that it is natural that information possessed by one would be imparted to the other."  *Meta-Film Assocs., Inc. v. MCA Inc.*, 586 F. Supp. 1346, 1356 (C.D. Cal. 1984).  This requires Plaintiff to show that Warren G either "was a supervisor with responsibility for [*Burn*], was part of the same work unit as the [Writer Defendants], or contributed creative ideas or material to the[ir] work."  *Id.* at 1355-56; *accord Gable*, 727 F. Supp. 2d at 826.  Not only has Plaintiff failed to come forth with ***any*** such evidence, but the record conclusively demonstrates that Warren G played no such role.  *See* Raymond Tr. 33:12-14 (Warren G had nothing to do with the "creative process" for *Burn*); Dupri Am. Interrog. Resp. No. 4 (although Dupri and Warren G collaborated on two songs [in 1998 and 1999, as discussed below], they "did not maintain an ongoing personal or professional relationship"); Cox Tr. 49:4-7 (Cox never worked with or met

**REPLY MEM. OF P. & A IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1   Warren G); Reply Declaration of Warren Griffin III ¶¶ 16-17 ("I had nothing to do

2   with and made no contribution of any kind to . . . *Burn* or any other song appearing

3   on . . . *Confessions*" and "do not have and never have had any financial interest of

4   any kind in [either]").  The Warren G access theories, thus, fail as a matter of law.

5       None of the cases that Plaintiff cites affects this conclusion.  (Opp. 18-20)  As

6   *Meta-Film* explains, *Kamar Int'l, Inc. v. Russ Berrie and Co.*, 657 F.2d 1059 (9th

7   Cir. 1981) and *Smith v. Little, Brown & Co.*, 245 F. Supp. 451 (S.D.N.Y. 1965) are

8   inapposite because, unlike Warren G, (1) the intermediary in *Kamar* provided

9   creative suggestions and ideas for the allegedly infringing work and had overlapping

10  dealings with the plaintiff and defendants concerning that work; and (2) the main

11  intermediary in *Smith* knew of plaintiff's manuscript and helped another writer

12  prepare an infringing manuscript with the same subject matter as plaintiff's.  *See*

13  *Meta-Film*, 586 F. Supp. at 1356, 1358.  The other primary out of circuit decisions

14  on which Plaintiff relies are similarly distinguishable or otherwise unremarkable.

15  *See T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 111 (1st Cir. 2006)

16  (defendant developed and built home using plaintiff's architectural plans that

17  homeowner had received from plaintiff and later gave to defendant after homeowner

18  and plaintiff stopped working together); *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d

19  350, 354 (4th Cir. 2000) (intermediary met with creators of allegedly infringing logo

20  to discuss the logo's design); *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996)

21  (third-party intermediary access requires proof that the intermediary "supervises or

22  works in the same department as the infringer or contributes creative ideas to him").

23      Finally, Plaintiff cites the District Court's decision in *Rice v. Fox Broad. Co.*,

24  148 F. Supp. 2d 1029 (C.D. Cal. 2001), but not the Ninth Circuit's, which holds that

25  plaintiff's access claims there "are based on speculation [and] conjecture."  330 F.3d

26  1170, 1178 (9th Cir. 2003).  In any event, the plaintiff there adduced evidence that he

27  had submitted a copy of his work directly to an executive of the network defendant

28  in charge of developing the allegedly infringing television show ***and*** given a copy to

1   an agent who attended a pitch meeting about the show and represented a producer

2   who helped develop it.  *See Rice,* 148 F. Supp. 2d at 1049-50.  Although this raised

3   an issue of fact on access, the Court held that plaintiff "*only barely clear[ed]*" the

4   access bar, but not by a sufficient margin to trigger the inverse ratio rule.  *Id.* at 1050

5   (emphasis added).  Plaintiff does not remotely approach even that threshold because,

6   in contrast to the executive and agent in *Rice,* Plaintiff has offered **no** evidence that

7   Warren G – or anyone else who potentially had an opportunity to view *Pain* (and

8   Defendants do not concede that Warren G did) – played any role in supervising or

9   contributing to *Burn*'s creation or even had a relationship with the Writer

10  Defendants.  *Rice,* therefore, is of no use to Plaintiff.

11
12              c.      Plaintiff's Characterization Of The Purported Relationship
                        Between Warren G And Raymond Is Utterly Baseless

13          Plaintiff claims that Warren G and Raymond have a "long history of personal

14  contacts and collaborations."  (Opp. 23)  Nothing could be further from the truth.

15          Plaintiff's own purported evidence belies his characterization of Warren G's

16  purported relationships with Raymond.  Far from establishing any sort of history

17  between them, the discovery cited by Plaintiff merely shows that Raymond "first

18  became aware of Warren G in the early 1990s"; that Raymond only met Warren G

19  "on one or two occasions"; and that Raymond could not recall whether the

20  meeting(s) took place between 1998 (when *Pain* was recorded) and 2004, but

21  thought "it would have been within the last 10 years."  (Raymond Am. Interrog.

22  Resp. Nos. 1, 4; Raymond Tr. 34:2-9, Jacobs Reply Dec. ¶¶ 6, 9, Exhs. C, F)  None

23  of the other supposed "evidence" that Plaintiff cites indicates that Warren G and

24  Raymond worked together on anything.

25          Plaintiff nevertheless would have this Court speculate that they did so simply

26  because he has identified two albums – the 1993 soundtrack album for the movie

27  *Poetic Justice* and Dupri's July 1998 album *Life In 1472* (which Plaintiff admits was

28  recorded in 1997 or earlier in 1998 and, thus, before *Pain*'s recording and release) –

1  that contain one song written or featuring a performance by Raymond and one or

2  more *different* songs written or featuring a performance by Warren G.  (Straughter

3  Dec. ¶ 55(a), (c), Exhs. I, L)  However, as set forth in Warren G's Reply Declaration,

4  Warren G and Raymond did ***not*** work together on *Poetic Justice* or *Life in 1472*.  *See*

5  Griffin Reply Dec. ¶¶ 6, 8-11.  Also, the mere fact that an album may contain

6  different songs involving different artists does ***not*** create an inference that the artists

7  actually worked together – a point which Plaintiff concedes while discussing a

8  purported album containing songs recorded by Reel Tight, Raymond and Dupri.

9  (*See* Straughter Dec. ¶ 55(g), Exh. Q)  Moreover, even if Plaintiff were able to show

10  that Warren G and Raymond worked together on *Poetic Justice* or *Life in 1472* (and

11  he cannot), it would be irrelevant because any such collaboration would have

12  predated *Pain*'s recording and, therefore, cannot support an inference of access.

13          d.    Plaintiff's Characterization Of The Purported Relationship

14               Between Warren G And Dupri Also Lacks Any Foundation

15       Plaintiff claims that Warren G and Dupri had "numerous, substantial and

16  direct" connections during the period 1997-1999 and share a "long history of

17  personal contacts and collaborations."  (Opp. 19 n.1, 23)  This claim is baseless.

18       Like the projects involving Raymond discussed above, Plaintiff asks the Court

19  to speculate that Warren G and Dupri (and Cox) worked together on the 2000

20  soundtrack album for the movie *Big Momma's House* ("*House*") simply because the

21  album has one song co-written and produced by Warren G and a number of ***different***

22  songs co-written by Dupri and/or Cox and featuring performances by Dupri.

23  (Straughter Dec. ¶ 55(f), Exh. P)  However, as confirmed by the Griffin Reply

24  Declaration and accompanying Reply Declarations of Jermaine Dupri and Bryan

25  Michael Cox, Griffin did not work with Dupri or Cox in connection with *House*.  *See*

26  Griffin Reply Dec. ¶¶ 12-15; Dupri Reply Dec. ¶¶ 8-11; Cox Reply Dec. at 2.  In any

27  case, as discussed already with respect to *Poetic Justice* and *Life in 1472*, the fact

28  that *House* contains different songs involving different artists does not create an

1    inference that the artists on the songs actually worked together.

2       Furthermore, even though Plaintiff identifies two songs *preceding Burn's*

3    *creation by four and five years* on which Warren G and Dupri collaborated,

4    *Protector's* on Dupri's 1998 album *Life in 1472* and *Havin' Things* on Warren G's

5    1999 album *I Want It All* (Straughter Dec. ¶ 55(c), (e), Exhs. I, O), this limited

6    evidence belies Plaintiff's claims that Warren G and Dupri have "numerous,

7    substantial and direct" connections and a "long history of personal contacts and

8    collaborations." (Opp. 19 n.1, 23) This is especially so because, as the two confirm

9    in their reply declarations, they worked in different locations and did not see each

10    other during these projects and merely wrote and recorded lyrics for half of a verse

11    or less of each other's songs. *See* Griffin Reply Dec. ¶¶ 2-8; Dupri Reply Dec. ¶¶ 2-

12    7. Thus, while *Protector's* is irrelevant in any event because, as noted already, it

13    predates *Pain's* recording, the discrete nature and minimal degree of Warren G's and

14    Dupri's collaboration on *Protector's* and *Havin' Things* destroy Plaintiff's claims

15    about their relationship. Accordingly, Plaintiff has not adduced any evidence

16    remotely suggesting that Warren G had any relationship at all – let alone an ongoing

17    one – with the Writer Defendants before or at the time of *Burn's* creation.

18
19            e.    Plaintiff's Failure And Inability To Challenge Warren G's, Raymond's And Dupri's Credibility Bar His Theories

20       As with his Reel Tight theories, Plaintiff effectively seeks an opportunity to

21    convince a jury that Warren G and the Writer Defendants are lying in their

22    Declarations when they deny that Warren G gave the Writer Defendants a copy of

23    *Pain* or the Album. But, once again, Plaintiff has not identified a single *fact* that

24    raises even a remote question about Warren G's or the Writer Defendants' credibility

25    on this issue. Plaintiff, thus, cannot avert summary judgment – as he attempts to do

26    here – based on his desire to cross-examine Warren G and the Writer Defendants at

27    trial and undermine their credibility. *See Texaco,* 764 F.2d at 608-09; *Argonaut*, 701

28    F.2d at 97; *Curl*, 517 F.2d at 214; *Eaton*, 972 F. Supp. at 1024. These efforts

directed at Warren G are improper for the additional reason that Plaintiff elected not to take his deposition.  *See Meraz v. Jo-Ann Stores, Inc.*, 2004 WL 882458, at *16 (C.D. Cal. Apr. 2, 2004) ("If Plaintiff truly believed that affiant[s'] testimony is not credible, then it was incumbent upon her to depose them or otherwise explore their testimony during discovery and attempt to expose any inconsistencies in their testimony which could cast doubt on their affidavits . . . . Plaintiff has not done so, and thus these affidavits are now uncontradicted.") (citing *Jones v. Owens-Corning*, 69 F.3d 712, 718 (4th Cir. 1995)) (footnote omitted); *Trinsey v. K. Hovnanian at Upper Merion, Inc.*, 1994 WL 249789 (E.D. Pa. June 6, 1994) (plaintiff did not take defendant's deposition and, therefore, "the only conceivable basis on which [plaintiff] could hope to prevail is that the fact-finder might disbelieve all of [defendant's affidavit]"; however, . . . "the party opposing summary judgment . . . 'may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof'") (quoting *Rinieri v. Scanlon*, 254 F. Supp. 469, 474 (S.D.N.Y. 1966)) (other citations omitted).  Because Plaintiff has failed to demonstrate a material issue of fact concerning Warren G's or the Writer Defendants' credibility, his Warren G access theories must be rejected.

### 4. Plaintiff Cannot Raise A Triable Issue Of Fact About Access Based On The Relationship Among The Writer Defendants

Plaintiff's blanket reliance on the "long history of personal contacts and collaborations . . . over a period of ten years" among the Writer Defendants (Opp. 23) is patently illogical.  In short, because Plaintiff has not adduced any evidence that any one of the Writer Defendants had access to *Pain*, the extent of their "personal contacts and collaborations" with each other is irrelevant.  Plaintiff, therefore, cannot establish access on this basis.

Plaintiff's "corporate receipt" theory fails for similar reasons.  (Opp. 20-21) This theory here, which Plaintiff neither explains or attempts to support with any evidence, relies on principles normally applicable to third-party intermediary access

1   claims.  (*See id.*)  Specifically, Plaintiff attempts to analogize Dupri and/or Raymond

2   to an executive with responsibility for an allegedly infringing work who (1) had an

3   opportunity to view the allegedly infringed work and (2) participated in meetings

4   regarding the allegedly infringing work in which he could provide creative

5   comments or suggestions.  (Opp. 20)  Whatever relevance those principles might

6   have to Warren G, they do not apply to Dupri and Raymond because they are not

7   third parties.  In any case, Plaintiff's analogy breaks down at step (1) because he has

8   not proffered any evidence remotely suggesting that Dupri or Raymond ever had an

9   opportunity to view *Pain*.  Thus, Plaintiff's corporate receipt theory is baseless.

### 5.   Plaintiff's Wide Dissemination Theory Fails Because It Has No Foundation Whatsoever

12      Plaintiff makes no effort in his opposition brief to argue that the Album was

13   widely disseminated.  Nevertheless, in his declaration, Plaintiff effectively disputes

14   his own testimony that the Album was a commercial failure (SOF 35; Br. 6) and tries

15   to create an issue of fact that it was widely disseminated by stating that "*it has been*

16   *reported*" that the Album (1) reached numbers 13, 32 and 192 on different Billboard

17   charts and (2) sold "something in excess of 50,000 copies."  (Straughter Dec. ¶ 49

18   (emphasis added))  Plaintiff purports to corroborate the first of these statements with

19   two unauthenticated Wikipedia print-outs about Reel Tight and purported Billboard

20   chart positions, but proffers ***nothing*** to support the second statement concerning the

21   Album's alleged sales.  (*Id.*, Exh. J)  Plaintiff offers this supposed "evidence" to try

22   to controvert the statement of undisputed fact that the Album "was not widely

23   disseminated and a commercial failure," *see* Dkt. No. 237 at 11:22-26, even though

24   he ***admits*** that *Pain* was never released as a single and the Album was not a "big hit"

25   and even though one of the documents he cites states that the Album "failed to make

26   an impact."  (Straughter Dec. ¶ 35, Exh. J at 1)

27      The Court should strike and/or disregard ***all*** of this "evidence."  <u>First</u>, the

28   statements contained in paragraph 49 of Plaintiff's declaration are inadmissible

1   because (1) they are comprised entirely of hearsay; (2) he has no personal knowledge

2   of the Album's chart performance or sales and, therefore, is not competent to testify

3   about such matters; and (3) they are otherwise wholly unsupported.  <u>Second</u>, the

4   Wikipedia documents in Exhibit J to his declaration are inadmissible because the

5   statements by their undisclosed author(s) concerning the Album's supposed chart

6   history are hearsay and because these documents are not authenticated.  Plaintiff,

7   therefore, has no admissible evidence regarding the Album's popularity or sales.

8   Accordingly, he has not raised an issue of fact about wide dissemination.

9
10
   **D.    <u>Summary Judgment Is Warranted Because Plaintiff Has Not Come
   Forth With Any Evidence Rebutting Defendants' Showing That He
   Cannot Satisfy The Extrinsic Test</u>**

11   Defendants' opening brief comprehensively shows that the conclusions and

12   testimony of Plaintiff's purported expert, Cheryl Keyes, Ph.D., (1) should be

13   disregarded and do not raise a triable issue of fact that *Pain* and *Burn* are strikingly

14   or substantially similar because, among other things, they are indelibly tainted by her

15   unethical contingency fee arrangement and because they do not pass muster under

16   Fed. R. Evid. 702, *Daubert* and its progeny; and (2) fail in numerous respects to raise

17   any such triable issue on the merits, including, among other reasons, because her

18   own transcriptions confirm that the two songs' ***musical expression*** of the purported

19   elements at issue is markedly different; she applied incorrect definitions of

20   "strikingly similar" and "substantially similar"; she did not conduct any prior art

21   research; she conceded at her deposition that her striking similarity conclusions lack

22   any foundation; and based her substantial similarity conclusions on a methodology

23   that Ninth Circuit rejected in the very case that Plaintiff relies on most, *Swirsky v.*

24   *Carey*, 376 F.3d 841, 848 & n.13 (9th Cir. 2004).  (Br. 7-11, 21-25)

25   Plaintiff does not address in his opposition brief any of these or the various

26   other case-ending shortcomings that Defendants present in their moving papers.

27   Instead, he simply argues in a wholly conclusory fashion that Dr. Keyes has

28   "identified and . . . described in great detail no less than [16] specific 'substantial

1   similarities' in the musical expressions in [*Pain*] and *Burn*"; that she "is of the

2   opinion [that the] combination of all those elements . . . constitutes a 'striking

3   similarity' between the two works"; that "she has carefully adhered to the 'legal'

4   definitions of 'substantial' and 'striking' similarity"; and that she has "thoroughly

5   refuted the contentions made by Dr. Ferrara[, Defendants' expert musicologist]."

6   (Opp. 31 (citations omitted))  In addition, despite the obvious differences in the

7   purported elements at issue in *Pain* and *Burn* and Dr. Keyes' admission that she did

8   not conduct any prior art research to determine whether any songs predating *Pain*

9   contain these elements – either alone or in combination (*see* SOF 55, 56, Dkt. No.

10  212-2 at 16) – Plaintiff asks the Court to accept his unsupported speculation that the

11  purported combination of the elements that she has identified "in themselves,

12  virtually insure that there is no past precedent featuring all of them together."  (Opp.

13  33 (citations omitted))  As we now demonstrate, Plaintiff's conclusory arguments

14  and speculation do not create an issue of fact.

15          **1.    Plaintiff Improperly Attempts To Create An Issue Of**
16                  **Fact By Offering A Sham Declaration From Dr. Keyes**

17          As set forth in Defendants' moving brief (Br. 8, 21, 24), Dr. Keyes testified at

18  her deposition exactly as she had in the only other copyright case in which she

19  testified as a purported expert that "strikingly similar" and "substantially similar,"

20  respectively, mean "very similar" and "somewhat similar."  (SOF 51, 52, 62, 63,

21  Dkt. No. 212-2 at 15, 19)  Dr. Keyes also applied these definitions while testifying

22  about the purported elements at issue here.  (*Id.*; *see also* accompanying Motion To

23  Exclude Reply at 3-9)  She made no attempt to correct this testimony before signing

24  her deposition, but, in response to Defendants' showing that she does not understand

25  or know how to apply these terms, she asserts in her declaration that she "concur[s]"

26  with Defendants' "striking similarity" definition and that she meant to use that and

27  their "substantial similarity" definitions all along.  (Keyes Dec. ¶¶ 63-66)

28          Dr. Keyes' declaration testimony is entirely at odds with her deposition

1   testimony on these issues and clearly designed to create an issue of fact to avoid

2   summary judgment.  As such, her declaration testimony is a sham that must be

3   disregarded.  *See, e.g., Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 780 n.28 (9th

4   Cir. 2002) ("We find [plaintiff's] affidavit to be a sham submitted in an attempt to

5   create a triable issue.  Because Orr's deposition testimony contradicts her affidavit,

6   Orr has not raised a triable issue of fact on the statute of limitations issue.") (citing

7   *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991)); *Burrell v. Star*

8   *Nursery, Inc.*, 170 F.3d 951, 954 (9th Cir. 1999) (affirming district court's holding

9   "that portions of [plaintiff's] affidavit filed in opposition to summary judgment

10  should be disregarded . . . because they directly contradicted her earlier deposition

11  testimony and thereby sought to create 'sham issue[s] of fact'") (citation omitted).

12  Because the record confirms that Dr. Keyes neither understood nor applied the

13  proper definitions of "striking similarity" and "substantial similarity," her

14  conclusions and testimony do not allow the trier of fact to find that Plaintiff satisfied

15  the extrinsic test.  Defendants, therefore, are entitled to summary judgment for this

16  reason alone.  *See Swirsky*, 376 F.3d at 845 ("If [plaintiff] cannot present evidence

17  that would permit a trier of fact to find that he satisfied the extrinsic test, he

18  necessarily loses on summary judgment because 'a jury may not find substantial

19  similarity without evidence on both the extrinsic and intrinsic tests.'") (quoting *Rice*,

20  330 F.3d at 1174) (other quotations & citation omitted).

21          **2.    Plaintiff's Conclusory Assertions That *Pain* And *Burn***
22          **Share 16 Similarities Do Not Create An Issue Of Fact**

23          Plaintiff seems to believe that he can create an issue of fact simply by having

24  Dr. Keyes say that *Pain* and *Burn* are strikingly and/or substantially similar without

25  providing ***any*** analysis or evidence that the songs have any protectable ***expression*** in

26  common.  This is not the case.  *See Tisi v. Patrick*, 97 F. Supp. 2d 539, 549

27  (S.D.N.Y. 2000) ("'Although plaintiff's expert opines that the songs are strikingly

28  similar, an issue of fact cannot be created by merely reciting the magic words

1    'strikingly similar' and 'no possibility of independent creation.'") (quoting *McRae*,

2    968 F. Supp. at 566) (internal quotations omitted).

3         The fact of the matter is that Plaintiff's 16 similarity assertions are illusory:

4    • Motifs A/Tag through Motif F/Tag: These six "substantial similarities" are
5      based on pitch sequences alone, which (1) Dr. Keyes' initial report shows are
       significantly different – both in their length and content – in *Pain* and *Burn*
6      (*see* Jacobs Dec., Exh. V ¶¶ 13-22, Dkt. 212-22 at 8-13); (2) the songs express
       in very different ways (*see* Ferrara Dec., Exh. C ¶¶ 3, 23-38, 44-51, 55-64, 68-
7      74, 79-87, 90-96, Dkt. 212-33 at 3, 15-37; accompanying Ferrara Reply Dec.
       ¶¶ 7-12); and (3) are the product of a methodology rejected by the Ninth
8      Circuit.  *See Swirsky*, 376 F.3d at 848 & n.13 (to examine pitch sequences in
       isolation and not in combination with rhythm, harmonic chord progression,
9      tempo and key "is to perform an incomplete and distorted musicological
       analysis" that risks "breaking music down beyond recognition").  Moreover,
10     just as it would erroneous to suggest that the words "treason" and "senator"
       are substantially (or strikingly) similar because they have the same letters, it is
11     specious to assert that the supposed "motifs" are because they have some of
       the same pitches in common, especially in light of the limited universe of only
12     seven pitches from which to choose (*see* Ferrara Dec., Exh. C ¶¶ 26, 58;
13     Ferrara Reply Dec. ¶¶ 16-22);

14   • Motif G:  This supposed "substantial similarity" consists of nothing more than
15     the appearance in the final chorus of *Pain* and *Burn* of a melisma – which Dr.
       Keyes concedes is a "stylistic device exploited by a number of contemporary
16     pop/R&B singers" and "common to the R&B genre" of singing several notes
       on one syllable – that she confirms and, Dr. Ferrara further explains, is not
17     even in the same location within those choruses and, in any event, is simply an
       arrangement *idea* that has **no overlap in its musical expression** in the songs.
18     (*See* Jacobs Dec., Exh. V ¶ 23, Dkt. 212-22 at 13-14; Ferrara Dec., Exh. C ¶¶
19     100-105, Dkt. 212-33 at 3, 39-41; Ferrara Reply Dec. ¶¶ 13, 23));

20   • Motif H:  This last "substantial similarity" is based on a supposed 8-bar chord
       progression in *Pain* in *Burn*; however, Dr. Keyes conceded that (1) *Pain*'s
21     chord progression repeats every 4 bars and, thus, is only 4 bars long, while
       *Burn*'s repeats every 8 bars and, thus, is 8 bars long; (2) the chord
22     progressions have different chords (I$^{add9}$ — vi$^7$ — IV$^{add9}$ — V$^{sus4}$ in *Pain* versus I
       — vi$^7$ — IV$^{add9}$ — IV — I — vi$^7$ — IV$^9$ — ii-V in *Burn*) and different rhythmic
23     durations; (3) *Pain*'s chord progression "is not uncommon in popular song
       styles"; and (4) the Writer Defendants may have independently created theirs.
24     (*See* Jacobs Dec., Exh. V ¶¶ 24-25, Dkt. 212-22 at 14-15; SOF 83-84, 86-90;
25     Ferrara Dec., Exh. C ¶¶ 110-16, Dkt. 212-33 at 43-45; Ferrara Reply Dec. ¶¶
       14, 24);

26   • Motif B/Tag's appearance in bars 40-42 and 112-14 of both songs:  Dr. Keyes
27     treats this arrangement idea as two separate purported "striking similarities,"
       but fails to take into account that (1) as discussed above, the duration and
28     content of the **pitch sequences** comprising this motif in the two songs are very

different (1-7-1-1-1-2-3-2-1-6-5 in *Pain* versus 1-7-1-7-1-2-3-2-1 in *Burn*), the songs' expression of the motif is very different and, in any event, the motif is not actionable under Ninth Circuit law, *see Swirsky*, 376 F.3d at 848 & n.13; and (2) her own report makes clear that, unlike *Pain*, the motif in *Burn* starts with a pick-up note in bars 39 and 111, not bars 40 and 112 like *Pain*, readily distinguishing the motif's placement in the two songs.  (*See* Jacobs Dec., Exh. V ¶¶ 14-15, 30, Dkt. 212-22 at 9, 16; Ferrara Reply Dec. ¶¶ 8, 17);

- Motif H's appearance in bar 11 of both songs:  Dr. Keyes maintains that this is another supposed "striking similarity" (*see* Jacobs Dec., Exh. V ¶¶ 9, 24, 30, Dkt. 212-22 at 6-7, 14, 16); however, in addition to being an unprotectable and ***abstract idea***, the premise of her analysis of this element is false because, as discussed above, *Pain*'s chord progression is 4 bars, not 8 like *Burn*'s, and has different chords and different rhythmic durations than *Burn*;

- 18-bar introduction (10 bars plus 8 bars) and pick-up note in bar 18 leading into first verse:  Dr. Keyes asserts that these ***abstract ideas*** are separate "striking similarities" (*see* Jacobs Dec., Exh. V ¶¶ 9, 30, Dkt. 212-22 at 6-7, 16); however, her assertion is foreclosed by the fact that (1) the duration of two of the five phrases comprising the songs' introductions is very different, confirming that the introductions are not strikingly or substantially similar (Ferrara Dec., Exh. C ¶¶ 110-16, Dkt. 212-33 at 43-45; Ferrara Reply Dec. ¶¶ 26); (2) she concedes that neither of these ideas is original to Plaintiff, their ***expression*** in *Pain* and *Burn* is different and that the Writer Defendants may have decided to use the second idea independently of and without reference to *Pain* (SOF 58, 60, 61); and (3) in any event, these purported similarities are duplicative because the pick-up note demarcates the end of the introduction and the beginning of the first verse and, as such, its placement in bar 18 is simply a function of the length of the introduction (Ferrara Reply Dec. ¶¶ 27);

- No drums in the first 10 bars (or for 40 beats) and drums and arpeggiated guitars entering on bar 11:  Like the elements immediately above, Dr. Keyes claims that these two ***abstract ideas*** also are separate "striking similarities" (*see* Jacobs Dec., Exh. V ¶¶ 9, 30, Dkt. 212-22 at 6-7, 16); but, as above, her claim is belied by the fact that (1) she concedes that neither of these ideas is original to Plaintiff, their ***expression*** in *Pain* and *Burn* is different and that the Writer Defendants may have decided to use both of them independently of and without reference to *Pain* (SOF 58, 60, 61); and (2) in any event, these purported similarities are duplicative because the entry of drums and guitars on bar 11 merely defines where the drums' silence in bars 1-10 ends and, as such, is the flip side of the same coin (Ferrara Reply Dec. ¶¶ 28-29); and

- Strings enter on bar 3:  This final purported "striking similarity" – like all other such similarities – is simply an ***abstract idea*** (*see* Jacobs Dec., Exh. V ¶¶ 9, 30, Dkt. 212-22 at 6-7, 16) that cannot possibly create an issue of fact because Dr. Keyes concedes that is not original to Plaintiff, its ***expression*** in *Pain* and *Burn* is different and that the Writer Defendants may have decided to use it independently of and without reference to *Pain* (SOF 58, 60, 61).

Dr. Keyes' conclusory declaration statements regarding the purported similarities

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

**REPLY MEM. OF P. & A IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1  cannot and do not affect this analysis.  *See* Keyes Dec. ¶¶ 48, 64, 72.  Dr. Keyes'

2  laundry list of random similarities, thus, does not aid Plaintiff.  *See Litchfield v.*

3  *Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (rejecting "list of similarities"

4  intended to "show . . . extrinsic similarity" because it is "inherently subjective and

5  unreliable" and emphasizing that such lists warrant caution "where, as here, [they]

6  emphasize. . . random similarities scattered throughout the works") (citations

7  omitted); *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1180-81 (C.D. Cal.

8  2001) ("lists of similarities are to be discouraged even where they are skillfully

9  prepared" because "random similarities scattered throughout" do not "connote a

10  substantial similarity overall";  rejecting plaintiffs' lists because "most of the . . .

11  similarities are at the abstract level of 'ideas' (or an ever. less definite form of

12  articulation), rather than 'expression'") (internal quotations & citations omitted).

13      Neither does Plaintiff's blanket invocation of *Swirsky*, the facts of which are

14  easily distinguished from those here.  <u>First</u>, the defendants there conceded access,

15  thereby triggering the inverse ratio rule and its lower standard of proof of substantial

16  similarity.  *See Swirsky*, 376 F.3d at 844-45.  <u>Second</u>, the plaintiffs there were

17  entitled to a presumption of originality of their work.  *See id.* at 851.  <u>Third</u>, the

18  plaintiffs there also adduced evidence of substantially similar *expression* of musical

19  ideas embodied in the choruses of the songs at issue.  *See id.* at 844-48.  <u>Fourth</u>, in

20  contrast to Dr. Keyes, nothing in *Swirsky* suggests that plaintiffs' expert there

21  conceded that the musical expression of the elements at issue was different or that it

22  was possible that the creators of defendants' song created the elements independently

23  of and without reference to plaintiffs' song.  *Id.*  Because *Swirsky* involved very

24  different circumstances, Plaintiff cannot use it to avoid summary judgment.

25      The other Ninth Circuit decision cited by Plaintiff, *Three Boys Music Corp. v.*

26  *Bolton*, 212 F.3d 477, 481 (9th Cir. 2000), also is inapposite.  <u>First</u>, in contrast to Dr.

27  Ferrara, the defense expert in that case "***conceded*** that there were similarities

28  between the two songs [at issue] and that he had not found the combination of

unprotectable elements in [plaintiffs'] song 'anywhere in the prior art.'" *Id.* at 485 (emphasis added).  <u>Second</u>, the elements at issue there, although unprotectable, included various aspects of ***musical expression***, including the lyric, rhythm and pitch underlying the hook phrase, which are very different than the purely abstract ideas that Plaintiff relies on here.  *Id.*  <u>Third</u>, like *Swirsky*, nothing in *Three Boys* suggests that plaintiffs' expert there conceded – as Dr. Keyes did here – that the musical expression of the elements at issue was different or that it was possible that the creators of defendants' song created the elements independently of and without reference to plaintiffs' song.  *Id.*  Thus, *Three Boys* does not help Plaintiff.

As the foregoing makes clear, Plaintiff attempts to raise a triable issue based on the use of a limited number of ***ideas*** that his own expert has conceded are not original to Plaintiff and that *Pain* and *Burn* express in very different ways.  This he cannot do.  *See Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1109 (C.D. Cal. 2005) ("It is not sufficient that the ideas embodied in two works be similar.  Rather, the trier of fact must determine 'whether there is substantial similarity in the expressions of the ideas so as to constitute infringement.'") (quoting *Sid & Marty Krofft Tel. Prods. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977)); *see also Swirsky*, 376 F.3d at 845 n.4 ("Although the extrinsic test examines the similarity of ideas and expression, . . . ideas by themselves are not subject to copyright protection; only the *expression* of ideas is.") (citation omitted); *Rice*, 330 F.3d at 1175 ("[S]imilarities derived from the use of common ideas cannot be protected; otherwise, the first to come up with idea will corner the market.") (quotations & citation omitted).  Accordingly, Plaintiff has not met his burden under the extrinsic test.

### 3.   Plaintiff's Prior Art Arguments Misapprehend That He Bears The Burden Of Establishing Originality

Defendants' moving papers establish that Plaintiff's copyright registration does not have a presumption of validity, requiring him to demonstrate the originality of the elements at issue.  (Br. 15-16)  Those papers also show that Dr. Keyes

REPLY MEM. OF P. & A IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  admitted (1) that she made no attempt to determine whether those elements – either

2  individually or collectively – resulted from a prior common source, prior art or

3  scenes à faire and, thus, whether they are (or are not) original to *Pain* ; (2) the ideas

4  comprising the "strikingly similar" elements she lists are not original to Plaintiff.

5  (Br. 8-10; SOF 55, 56, 95)  In his opposition papers, Plaintiff ignores these matters

6  altogether, trying instead to create an issue of fact through his conjecture that the

7  purported combination of the elements "virtually insure[s] that there is no past

8  precedent featuring all of them together."  (Opp. 33 (citations omitted))

9       This goes nowhere for the simple reason that, on summary judgment, only

10  evidence matters.  Dr. Keyes' admissions above combined with Plaintiff's failure to

11  adduce any evidence remotely suggesting that the elements at issue are original to

12  him conclusively demonstrate that he has not raised an issue of fact about their

13  originality. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[If the

14  nonmoving party] fail[s] to make a sufficient showing on an essential element of [its]

15  case with respect to which [it] has the burden of proof," then "the moving party is

16  entitled to summary judgment as a matter of law.") (internal quotations omitted).

17  Defendants are entitled to summary judgment on this ground as well.

18  ## III.  **CONCLUSION**

19       For all of the foregoing reasons, Defendants respectfully request that the Court

20  grant summary judgment or, in the alternative, partial summary judgment limiting

21  Plaintiff's potential recovery to no more than 13 percent of any damages awarded.

22  DATED:  March 25, 2011       MANATT, PHELPS & PHILLIPS, LLP

23                              By:_____/S/_____

24                                 ROBERT A. JACOBS
                                   EMIL PETROSSIAN

25                                 *Attorneys for Defendants* Usher Raymond IV,
                                   Jermaine Dupri, EMI April Music Inc., UR-IV

26                                 Music, Inc., So So Def Productions, Inc. (sued
                                   erroneously as "So So Def Recordings, Inc."),

27                                 W.B.M. Music Corp., Bryan Michael Cox and
                                   Babyboys Little Publishing Company

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

-25-

**REPLY MEM. OF P. & A IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**