1  Alan G. Dowling, Esq. (SBN 70686)
2  ALAN G. DOWLING,
   A PROFESSIONAL CORPORATION
3  6049 Pomegranate Lane
4  Woodland Hills, California 91367
   Telephone:  (818) 679-6395
5  Fax:          (818) 436-2117
6  Email:        agdowling@aol.com
   *Attorneys for Plaintiff* Ernest Lee Straughter

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  ERNEST LEE STRAUGHTER,           No. CV 08-2170 CAS (CWx)

12              Plaintiff,            Hon. Christina A. Snyder
13                                    Courtroom 5
    vs.
14                                    **PLAINTIFF'S ADDITIONAL**
15  USHER RAYMOND IV, JERMAINE       **SUPPLEMENTAL MEMORANDUM**
    DUPRI MAULDIN, BRYAN             **OF POINTS AND AUTHORITIES IN**
16  MICHAEL COX, EMI APRIL           **OPPOSITION TO DEFENDANTS'**
    MUSIC, INC., UR-IV MUSIC, INC.,  **MOTION FOR SUMMARY**
17  SO SO DEF PRODUCTIONS, INC.,     **JUDGMENT, OR IN THE**
18  W.B.M. MUSIC CORP., BABYBOYS     **ALTERNATIVE, FOR PARTIAL**
    LITTLE PUBLISHING COMPANY,       **SUMMARY JUDGMENT**
19  ARISTA RECORDS LLC, ZOMBA
20  RECORDINGS LLC, SONY MUSIC       Date Case Filed:    April 1, 2008
    ENTERTAINMENT and LaFACE         Trial Date:         None Yet Set
21  RECORDS LLC, et al.,
22                                    [MOTION UNDER SUBMISSION]
               Defendants.
23

24

25

26

27

28

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
WOODLAND HILLS, CA

Straughter v Raymond, et al.,
USDC, CD CA, Case No. CV 08-2170 CAS(CWx)          0          PLTF **ADDIT** SUPP P&A IN OPP TO DEFS
                                                               MOT FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **PLAINTIFF HAS MET HIS BURDEN, FOR PURPOSES OF THIS MOTION, WITH RESPECT TO SIMILARITY.**

A.    **Defendants Cannot "Ignore Away" The Numerous Similarities Identified By Plaintiff.**

The report of Mr. Saadi independently identified more than a dozen musical elements common to the two works, and further, has determined that they are in many respects arrayed and used in the same locations and manner within similar song structure and spatial organization within the two works, resulting in a *combination* of such elements that appears to be unique and unprecedented. (Saadi Report, ¶3-4, 30-48, 50-51 (Docket No. ["DN"] 270-271). For all their verbiage, misdirection, smokescreens, and the like, Defendants cannot hide the fact that, <u>by their own admission</u> (Defs' Supp Memo pp 3-5):

--Both songs have an 18 bar Introduction;

--Strings enter in both at bar 3 of that Introduction;

--Drums/arpeggiated guitar enter at bar 11 of that Introduction;

--Plucked arpeggiated strings are used in both Introductions;

--A pickup note is used in both, at bar 18, transiting from the Introduction to the first Verse beginning at bar 19;

--Both songs are organized according to a Verse-Chorus-Bridge-Chorus structure which includes numerous similarities in each such section of the song [cite prev brief list in fn, and/or GS and LF reports];

--The hook or chorus section in both songs appears for the first time at bar 35;

--Both songs share an 8 bar chord progression;

--Both songs feature melismas in the final chorus;

--Both songs conclude in the key of D flat;

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
WOODLAND HILLS, CA

Straughter v Raymond, et al.,
USDC, CD CA, Case No. CV 08-2170 CAS(CWx)

1

PLTF <u>ADDIT SUPP</u> P&A IN OPP TO
DEFS MOT FOR SUMMARY JUDGMENT

1  --Both songs feature a fade ending with the hook chorus;

2  --Both songs are in the R&B genre (and it is not disputed that both are about

3  romantic breakups).

4  --The first pitch sequence identified by Mr. Saadi as similar, from *Plaintiff's*

5  *Work*, can be depicted as "1 7 1 1 1 2 3 2 1" while the corresponding pitches in the

6  similar sequence in *Burn* are depicted as "1 7 1 7 1 2 3 2 1"—the only "difference"

7  being that the fourth pitch in *Plaintiff's Work*, "1," is changed to a "7" in *Burn*—a

8  difference of one pitch out of nine.  Moreover, a switch from "1" to "7" in pitch is a

9  common variation, and not a significant difference.

10  *(See also* Saadi Report, ¶ 30-48.)

11      "It is well settled that a jury may find a combination of unprotectible

12      elements to be protectible under the extrinsic test because '"the over-all

13      impact and effect indicate substantial appropriation."' Id. [Sid and Marty

14      Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157 (9th Cir.

15      1977)] at 1169 (quoting Malkin v. Dubinsky, 146 F. Supp. 111, 114

16      (S.D.N.Y. 1956))." *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485

17      (9th Cir.2000)("*Three Boys*").

18  Defendants miscite, out of context, inapposite cases referring to the need to

19  consider "protectable" elements; however, such cases did not involve combinations,

20  as here, and do not contradict or undermine the holdings of *Three Boys* and the

21  other cases on point.

22      **B.    Defendants' Argument Against "Originality" is Unfounded, and**

23  **Their Assertions as to Prior Art Are Ill-Conceived and Unsubstantiated.**

24      Defendants repeatedly miscomprehend and misapply the notion of

25  "originality."   No case stands for the proposition that Plaintiff's work, or its

26  constituent elements, must be unique, novel or unprecedented.

27      "In this circuit, the definition of originality is broad, and originality means

28

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
WOODLAND HILLS, CA

Straughter v Raymond, et al.,
USDC, CD CA, Case No. CV 08-2170 CAS(CWx)

2

PLTF ADDIT SUPP  P&A IN OPP TO
DEFS MOT FOR SUMMARY JUDGMENT

"little more than a prohibition of actual copying." *Three Boys,* 212 F.3d at 489(quoting *North Coast Indus. v. Jason Maxwell, Inc.,* 972 F.2d 1031, 1033(9th Cir.1992)). All that is needed to satisfy originality is for the author to contribute "something more than a `merely trivial' variation." *Id.*; *see also ETS-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1073 (9th Cir.2000)(referring to "the low threshold for originality under the Copyright Act")." *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004)("*Swirsky*").

Defendants equally miscomprehend and misuse the concept of "prior art." They act as if the identification of one or more previous works that are identical (or at least, according to Defendants, more or less similar) as to one or more of the elements in question *ipso facto*, renders Plaintiff's Work "unoriginal" and "unprotectable." "[A] work will not be denied copyright protection simply because it is substantially similar to a work previously produced by others, and hence, is not novel.  Accordingly, the search for prior art that frequently goes into challenging a patent <u>plays no role in copyright cases</u>." *Nimmer on Copyright* § 2.01[A] (emphasis added).

Even as to any one given musical element, if one or more prior works are identified that are identical to Plaintiff's, they are meaningless in this context unless Defendants can prove  beyond possibility of contradiction that either that the element in question has been used so often and/or in such famous works as to be hackneyed or commonplace; or that Plaintiff was himself copying it from the work(s) cited by Defendants; or Defendants must admit that they were themselves copying it from that prior work.

Where the ultimate issue, as here, concerns not just one element, but a <u>combination</u> of elements, it is not enough (or even meaningful, under *Three Boys*) for Defendants to conclusorily assert that certain individual elements, viewed in isolation, are "commonplace" or hackneyed.  Here, Defendants must identify prior

works containing the entire <u>combination</u> of elements (and identically, not just similarly, to those, and the way they appear, in Plaintiff's Work), and on that basis further prove either that the <u>combination</u> in question has been used so often and/or in such famous works as to be hackneyed or commonplace; or that Plaintiff was himself copying the combination from the alleged examples of "prior art" cited by Defendants; or Defendants must admit that they were themselves copying it from that prior work. There is no evidence of any of that, here.

Despite citing various individual prior works containing one or more (but never all or nearly all) of the elements cited by Mr. Saadi, Defendants have not met the burden of proving that <u>the entire combination of elements</u> was hackneyed or commonplace in itself, or was copied in fact by either Plaintiff or Defendants from any prior work. <u>Defendant has not even found a single prior work that contains all of the elements cited by Mr. Saadi</u>. Consequently, despite all of Dr. Ferrara's and Defendants' verbiage, exhibit excerpts, conclusionary and exaggerated rhetoric, and other "forensic" sleight of hand, Defendants have not established the existence of any "prior art" precluding Plaintiff's claim, under the applicable law. Failing to identify <u>any</u> works containing even just <u>both</u> of the pitch sequence elements (common to *Plaintiff's Work* and *Burn*) identified by Mr. Saadi, *in conjunction with* an 18 bar introduction—and not even looking for all of the other elements identified by Mr. Saadi-- Mr. Downes' rudimentary initial search of the world's largest searchable database of musical works of all genres simply confirmed irrefutably that no such combination has, apparently, ever been used before, and that in all events there is no basis for asserting that the combination is commonplace or hackneyed. (Downes Report, p. 2-6, Exhs. A, B, F and G.) Using whatever alternative (undisclosed) search method he may have used, <u>Dr. Ferrara likewise found no prior work embodying all of the elements in issue here</u>. [1]

---

1 Although Mr. Downes did indeed politely state that he considered Dr. Ferrara a

### C.   Mr. Saadi's Report and Testimony Address Expressions, Not Mere Ideas.

The specifically musical similarities identified and discussed by Mr. Saadi are not merely "ideas," but rather have been articulated with reference to specific musical passages in each work, evidenced by (and explained with reference to) musical transcriptions or scores depicting their musical expression in these works, as well as by sound recordings of actual performances of them.  (Saadi Report, ¶ 30-48, Visual Exhs A-E, Audio Exhs 1-3; Saadi Depo. 31:1-15, 32:4-16.) (The presence in both works of less musically important similarities, such as genre or style--contemporary R&B-- or subject matter-- romantic breakup—is nonetheless evidence *relevant to* a complete assessment of the likelihood of copying.)

Mr. Saadi repeatedly made it clear that he did not at all confuse musical "ideas" with musical "expression" in doing his work here. (*See, e.g.*, Saadi Depo. 31:1-31:15, 32:4-16  (R. Jacobs Supp Decl 7 29 11 Exh A, DN 278-3).)  According to Defendants' circular reasoning, the constituent elements of every musical work are merely "ideas" and not the "expression of ideas," even though articulated in musical notation, or in a recorded performance of the work, the details of which both experts examine.  No case has so held.

"[A] musicologist is not an expert on what the term "idea" means under the copyright laws. Labeling something as a "musical idea" does not necessarily bear on whether it is also an "idea" under the copyright laws and unprotectable for that reason." *Swirsky*, 376 F. 3d at 851. [¶]  No federal

"leading musicologist," he clarified that he is unqualified to assess the quality of Dr. Ferrara's work *as a musicologist*, and that his compliment had been based solely on the fact that Dr. Ferrara has been a paid expert in a substantial number of cases. (Downes Depo. 111:16-112:7(R. Jacobs Supp Decl 7 29 11 Exh B, DN 278-4.)

court has stated that a musical motive is not protectable because it is an idea. Nor does the "musical idea" of the first measure of Swirsky's chorus lack protection because of its brevity. Although it is true that a single musical note would be too small a unit to attract copyright protection (one would not want to give the first author a monopoly over the note of B-flat for example), an arrangement of a limited number of notes can garner copyright protection."

Swirsky, 376 F. 3d at 851-852, *citing Elsmere Music, Inc. v. Nat'l Broad. Co.,* 482 F.Supp. 741, 744 (S.D.N.Y.1980) (four notes, substantial enough to be protected); *Santrayll v. Burrell,* 1996 WL 134803, at *2 (S.D.N.Y. Mar.25, 1996) (mem.order) (repetition of the word "uh-oh" four times for one measure, sufficiently original).

"We recognize the difficulties faced by the district court in this case. We have referred to "the turbid waters of the `extrinsic test' for substantial similarity under the Copyright Act." *Metcalf,* 294 F.3d at 1071. The application of the extrinsic test, which assesses substantial similarity of ideas and expression, to musical compositions is a somewhat unnatural task, guided by relatively little precedent. Music is an art form that "produces sounds and expresses moods," Debra Presti Brent, *The Successful Musical Copyright Infringement Suit: The Impossible Dream,* 7 U. Miami Ent. & Sports. L.Rev. 229, 244 (1990), but it does not necessarily communicate separately identifiable ideas. The extrinsic test provides an awkward framework to apply to copyrighted works like music or art objects, which lack distinct elements of idea and expression."

*Swirsky*, 376 F. 3d at 848.[2]

"[¶]   In analyzing musical compositions under the extrinsic test, we have

_____

2 Defendants repeatedly cite copyright infringement actions involving literary works, which by their very nature are entirely different from works of music or fine art.

6

PLTF **ADDIT SUPP_P&A IN OPP TO**
**DEFS MOT FOR SUMMARY JUDGMENT**

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
WOODLAND HILLS, CA

never announced a uniform set of factors to be used. We will not do so now. Music, like software programs and art objects, is not capable of ready classification into only five or six constituent elements; music is comprised of a large array of elements, some combination of which is protectable by copyright.   For example, in *Three Boys* we upheld a jury finding of substantial similarity based on the combination of five otherwise unprotectable elements. . . .  [¶]   There is no one magical combination of these factors that will automatically substantiate a musical infringement suit; each allegation of infringement will be unique. So long as the plaintiff can demonstrate, through expert testimony that addresses some or all of these elements and supports its employment of them, that the similarity was "substantial" and to "protected elements" of the copyrighted work, the extrinsic test is satisfied." *Swirsky*, 376 F. 3d at 849.

**D.     Dr. Ferrara's Approach is Based on Inappropriate Dissection and Misdirection.**

The fundamental flaw in the approach of Dr. Ferrara and Defendants is that they resort to dissection of the work, and passages, in question, into their most minute constituent parts (even down to the level of a minor difference of one pitch in two obviously similar 9-pitch sequences).

"Objective analysis of music under the extrinsic test cannot mean that a court may simply compare the numerical representations of pitch sequences and the visual representations of notes to determine that two choruses are <u>not</u> substantially similar, without regard to other elements of the compositions. Under that approach, expert testimony would not be required at all, for <u>any</u> <u>person untrained in music</u> could conclude that "2-2-2-2-2-2-1-2-1-3" did <u>not</u> match "2-2-4-3-2-3" or that a half-note is <u>not</u> identical to an eighth-note." *Swirsky*, 376 F. 3d at 847-848 (emphasis added).

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
WOODLAND HILLS, CA

Straughter v Raymond, et al.,
USDC, CD CA, Case No. CV 08-2170 CAS(CWx)

7

PLTF <u>ADDIT SUPP</u> P&A IN OPP TO
DEFS MOT FOR SUMMARY JUDGMENT

1  It is Dr. Ferrara who "examines pitch sequences in isolation and not in

2  combination" with other elements, resulting in an "incomplete and distorted

3  musicological analysis" that risks "breaking music down beyond recognition."

4  *Swirsky*, 376 F.3d at 848 n.13.   This misleading tactic of dissection combined with

5  citation to isolated instances of similar past uses has been expressly disapproved by

6  the courts. See, e.g., *Nimmer on Copyright*, *supra*, §2.01[A].

7  Having improperly dissected the works, Defendants then attempt a game of

8  "misdirection" by ignoring the similarities and trying to distract the Court with a

9  list of as many "differences" as possible, not only within the passages in question,

10 but elsewhere in the works.   The differences between the two works (especially

11 those outside of the particular passages in issue) are not the issue—the issue is

12 whether there are similarities, and whether they are qualitatively and/or

13 quantitatively substantial.   Mr. Saadi's candid acknowledgment of certain

14 variations, distinctions or difference identified by Dr. Ferrara does not render them

15 significant.   Moreover,, Mr. Saadi often made it clear that he had considered

16 rhythm, melody, harmony and other elements, and such variations, distinctions or

17 differences as had been noted by Dr. Ferrara had been observed and considered by

18 Mr. Saadi, but ultimately did not change the final opinions expressed in his report,

19 as to the similarities (and their degree and particulars).   (see, e.g., Saadi Depo.

20 39:12-40:2,  47:7-48:15,  50:18-51:1.)   The real point is that the litany of

21 "differences" asserted by Dr. Ferrara (to which counsel add unsupported adjectives

22 like "vastly," "very" and "substantially") are mere distractions aimed to misdirect

23 the Court's attention away from the similarities. (The determination of *how much*

24 of the Defendants' work is musically similar to, and thus attributable to, Plaintiff's

25 work is a matter relevant to the determination and measure of damages, but not to

26 the determination of liability.)

27 **E.     Defendants Have Not Proven, and Plaintiff Has Not Conceded,**

28

**Independent Creation or Coincidence.**

"By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that presumption through proof of independent creation. See Granite Music Corp. v. United Artists Corp., 532 F.2d 718, 721 (9th Cir. 1976). . . ." *Three Boys*, 212 F,.3d at 486.

On the ultimate issue, i.e., creation of the <u>combination</u> of elements identified by Mr. Saadi as similar in these works, and indeed even on the issue of creation of the particular individual element, Defendants have come forward with nothing but a bald, conclusory assertion that they created their work and did not copy Plaintiff. This does not even begin to approach the rudimentary (and insufficient) level of evidence proffered in *Swirsky* and *Three Boys*.

Defendants brazenly state that Mr. Saadi conceded independent creation of each element in issue in Defendants' work. That is an utterly false distortion of his testimony, for in fact, he refused to do so repeatedly, at deposition, instead emphasizing that (1) it was quite evident to him that Defendants' could not have independently (or as a matter of mere coincidence) created the entire <u>combination</u> of elements that are substantially similar as between Defendants' work and Plaintiff's, and therefore, (2) he was not comfortable with, and would not, opine in the abstract as to the possibility of Defendants having "independently" come up with each individual element, *in isolation*, as if that individual element were all that is in issue here  . (Saadi Report, ¶ 3-4, 49-51; see also Downes Report p. 3-6). Moreover, Mr. Saadi would not speculate as to what, factually, occurred outside his presence (i.e. as to Defendants' state of mind, or actions, in composing their work). (see, e.g., Saadi Depo. 38:25-39:6, 51:17-22.)    And proof of independent creation is not in any event a matter appropriate for expert testimony, much less inadmissible hearsay or speculation, whether from Dr. Ferrara or Mr. Saadi.

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
WOODLAND HILLS, CA

Straughter v Raymond, et al.,
USDC, CD CA, Case No. CV 08-2170 CAS(CWx)

9

PLTF <u>ADDIT</u> SUPP. P&A IN OPP TO
DEFS MOT FOR SUMMARY JUDGMENT

**F.   Messrs. Saadi and Downes Are Fully Qualified to Serve as Experts in This Case.**

Defendants have gone to inexplicable lengths, in their filings relating to this motion over the last seven months, to denigrate Plaintiff, his experts, and his attorneys.  They now assert, *ex cathedra,* but without any legal, factual or logical basis, that Mr. Saadi is not a "musicologist" and thus not qualified to testify as an expert in this case. Under FRE 702 et seq., Mr. Saadi's credentials fully establish his extensive musical education, background and experience, both in academic and pragmatic terms, and together with his report and testimony evidence his competence in listening to, comprehending, articulating, reading, transcribing,  and comparing music, either in audible form or in musical notation.  (Saadi Report, ¶ 5-7 and curriculum vitae; Saadi Depo. 146:13-148:13, 248:2-251:11.)   Moreover, his methodology, source materials and the definitions he applied in this case are virtually identical to those of Dr. Ferrara.  (*See* Saadi Report, ¶ 3, 8-10, Visual Exhs A-e, Audio Exhs 1-3.)  Mr. Downes was not proffered as a "musicologist," but rather as an expert in musical prior art searches, and his background, experience, expertise and resources certainly qualify him as an expert in doing so (Downes Report, ¶ p. 2 and Exhs A and B) , as evidenced by the fact that both the Manatt law firm (defense counsel herein) in a number of prior cases, and Dr. Ferrara himself, have used Mr. Downes services and resources for their clients' benefit previously. (Downes Depo. 15:19-16:16, 111:16-116:21.)

Dated:   August 10, 2011

Respectfully Submitted,
**ALAN G. DOWLING,**
**A PROFESSIONAL CORPORATION**

By: _*Alan G. Dowling*_

Alan G. Dowling
*Attorneys for Plaintiff* Ernest Lee Straughter