ROBERT A. JACOBS (SBN 160350)
E-mail: RJacobs@manatt.com
EMIL PETROSSIAN (SBN 264222)
E-mail: EPetrossian@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

*Attorneys for Defendants*
Usher Raymond IV, Jermaine Dupri,
EMI April Music Inc., UR-IV Music, Inc.,
So So Def Productions, Inc. (sued erroneously
as "So So Def Recordings, Inc."), W.B.M.
Music Corp., Bryan Michael Cox and
Babyboys Little Publishing Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST LEE STRAUGHTER, <br><br> Plaintiff, <br><br> vs. <br><br> USHER RAYMOND, IV et al., <br><br> Defendants. | Case No. CV 08-2170 CAS (CWx) <br><br> Hon. Christina A. Snyder <br> Courtroom No. 5 <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER DENYING SUMMARY JUDGMENT** <br><br> Hearing Date: October 17, 2011 <br> Hearing Time: 10:00 a.m. |

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.   THE LEGAL STANDARDS GOVERNING DEFENDANTS' MOTION ........................................................................................................ 1

III.   ARGUMENT ..................................................................................................... 2

    A.   The Court Should Reconsider Its Wide Dissemination And Third-Party Intermediary Access Holdings .......................................... 2

        1.   The Court Committed Clear Error By Holding That Back To The Real's Chart Position And A Single Defendant's Testimony About The Number Of Songs He Has Heard During His Lifetime Created A Genuine Issue Of Material Fact Regarding Wide Dissemination .......................................... 2

        2.   The Court Committed Clear Error By Holding That Plaintiff's Third Party Intermediary Evidence Created A Genuine Issue Of Material Fact On Access ............................... 7

    B.   The Court Should Reconsider Its Extrinsic Test Holding .................. 11

    C.   The Court Should Reconsider Its Copyright Ownership Holding...... 14

IV.   CONCLUSION ............................................................................................... 15

1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aalmuhammed v. Lee*,
    202 F.3d 1227 (9th Cir. 2000) ................................................................ 15

*Abada v. Charles Schwab & Co.*,
    127 F. Supp. 2d 1101 (S.D. Cal. 2000) ..................................................... 1

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
    722 F.2d 988 (2d Cir. 1983) ....................................................................... 3

*Acuff-Rose Music, Inc. v. Jostens, Inc.*,
    988 F. Supp. 289 (S.D.N.Y. 1997), *aff'd,* 155 F.3d 140 (2d Cir. 1998) ........... 3

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................. 14

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
    581 F.3d 1138 (9th Cir. 2009) .................................................................... 4

*Benay v. Warner Bros. Entm't, Inc.*,
    607 F.3d 620 (9th Cir. 2010) ..................................................................... 13

*Bernal v. Paradigm Talent and Literary Agency*,
    2010 WL 6397587 (C.D. Cal. Feb. 22, 2010) ......................................... 7, 8

*Brown Bag Software v. Symantec Corp.*,
    960 F.2d 1465 (9th Cir. 1992) .................................................................. 14

*Calhoun v. Lillenas Publ'g*,
    298 F.3d 1228 (11th Cir. 2002) ................................................................ 12

*Dessar v. Bank of Am. Nat'l Trust & Sav. Ass'n*,
    353 F.2d 468 (9th Cir. 1965) ...................................................................... 1

*Gable v. Nat'l Broad. Co.*,
    727 F. Supp. 2d 815 (C.D. Cal. 2010) ............................................... *passim*

*Hofmann v. Pressman Toy Corp.*,
    790 F. Supp. 498 (D.N.J. 1990) .................................................................. 9

*In re Roth*,
    2011 WL 1666895 (9th Cir. May 4, 2011) ................................................ 1

*Jorgensen v. Careers BMG Music Publ'g*,
    2002 WL 1492123 (S.D.N.Y. July 11, 2002) ............................................. 8

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Jorgensen v. Epic/Sony Records*,
  351 F.3d 46 (2d Cir. 2003) .................................................................................. 5

*Meta-Film Assocs., Inc. v. MCA Inc.*,
  586 F. Supp. 1346 (C.D. Cal. 1984) ........................................................... *passim*

*Preaseau v. Prudential Ins. Co.*,
  591 F.2d 74 (9th Cir. 1979) .................................................................................. 1

*Pyramid Lake Paiute Tribe of Indians v. Hodel*,
  822 F.2d 364 (9th Cir. 1989) ................................................................................ 2

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003) ............................................................................ 12

*Sid & Marty Krofft Tel. Prods. v. McDonald's Corp.*,
  562 F.2d 1157 (9th Cir. 1977) ............................................................................ 12

*Stewart v. Wachowski*,
  574 F. Supp. 2d 1074 (C.D. Cal. 2005) ........................................................ 12, 13

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) .................................................................. 12, 13, 14

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ....................................................................... *passim*

*Zuill v. Shanahan*,
  80 F.3d 1366 (9th Cir. 1996) .............................................................................. 15

## OTHER AUTHORITIES

4 Nimmer on Copyright § 13.03[B][2] ...................................................................... 12

## RULES

Fed. R. Evid. 201 ........................................................................................................ 2

Fed. R. Evid. 201(e) ................................................................................................... 3

Fed. R. Evid. 201(e) Adv. Comm. Notes (1972) ....................................................... 3

Local Rule 7-18 ...................................................................................................... 1, 2

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

-iii-

**MEM. OF P. & A IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION**

## I. PRELIMINARY STATEMENT

Defendants are mindful of the Court's limited resources and interest in finality and, thus, ordinarily would not burden it with a request that it revisit one of its decisions. Defendants respectfully submit, however, that because the Court's summary judgment Order dated August 19, 2011 ("Order") either did not consider critical uncontroverted facts or misapplied or departed from clear legal precedent, reconsideration is appropriate.

Specifically, for the reasons set forth in Part III below, Defendants seek reconsideration of the Court's holdings regarding (1) wide dissemination and third-party intermediary access; (2) the extrinsic test; and (3) ownership of the copyright in the song *The Reasons Why* ("*Reasons*"). Because these holdings are contrary to the uncontroverted facts and/or settled law, they constitute clear error and cannot stand. The Court, therefore, should vacate those holdings and grant Defendants summary judgment or, in the alternative, partial summary judgment.

## II. THE LEGAL STANDARDS GOVERNING DEFENDANTS' MOTION

"Denial of summary judgment is 'generally interlocutory and [thus] subject to reconsideration by the court at any time.'" *In re Roth*, 2011 WL 1666895, at *1 (9th Cir. May 4, 2011) (quoting *Preaseau v. Prudential Ins. Co.*, 591 F.2d 74, 79–80 (9th Cir. 1979) (internal quotation marks omitted)); *accord Dessar v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 353 F.2d 468, 470 (9th Cir. 1965). "A district court may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law." *Abada v. Charles Schwab & Co.*, 127 F. Supp. 2d 1101, 1202 (S.D. Cal. 2000) (citations omitted). Local Rule 7-18 permits reconsideration on the following grounds:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such

> decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

L.R. 7-18. Reconsideration also is proper in order "to correct a clear error or prevent manifest injustice." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 822 F.2d 364, 369 n.5 (9th Cir. 1989) (internal quotation marks, alteration and citation omitted).

## III. ARGUMENT

### A. The Court Should Reconsider Its Wide Dissemination And Third-Party Intermediary Access Holdings

#### 1. The Court Committed Clear Error By Holding That *Back To The Real*'s Chart Position And A Single Defendant's Testimony About The Number Of Songs He Has Heard During His Lifetime Created A Genuine Issue Of Material Fact Regarding Wide Dissemination

Defendants established in their summary judgment papers – and the Court agreed – that Plaintiff failed to adduce any admissible evidence of wide dissemination. Order at 21. Nevertheless, the Court conducted its own research and found "independent evidence" that, for just one week in June 1999, *Back To The Real*, the album containing *Reasons* ("Album"), reached number 32 on the "Billboard R&B/Hip Hop Chart" ("R&B Chart") and number 198 on the "Billboard 200 Chart," taking judicial notice of these facts under Fed. R. Evid. 201. *Id.* According to the Order, the R&B Chart "lists the most popular songs in R&B and hip hop." *Id.* at 22 (emphasis added). Based on the judicially-noticed fact of the Album's position on the R&B Chart and the supposed acknowledgment by two of the songwriter defendants that "they have heard hundreds of thousands of songs from a variety of artists over the years," the Court held that "a reasonable jury could conclude that there is more than a 'bare possibility' that defendants had an opportunity to hear *Reasons*." *Id.* at 22 (citing *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 483-85 (9th Cir. 2000)). This holding constitutes clear error for five separate reasons.

<u>First</u>, the Court erred by not giving Defendants notice of, and an opportunity to be heard regarding, its intention to take judicial notice of the chart information, which was not part of the record in this case. *See* Fed. R. Evid. 201(e) Adv. Comm. Notes (1972) ("Basic considerations of procedural fairness demand an opportunity to be heard on the propriety of taking judicial notice and the tenor of the matter noticed."). This motion constitutes Defendants' request for such an opportunity. *See* Fed. R. Evid. 201(e) ("In the absence of prior notification, the request may be made after judicial notice has been taken.").

<u>Second</u>, the Order's reliance on the Album's purported chart history was improper. As a threshold matter, the Court specifically based its wide dissemination holding on the <u>Album</u>'s position on the R&B Chart, which the Order erroneously described as "list[ing] the most popular <u>songs</u> in R&B and hip hop." Order at 21 (emphasis added). But the name of the chart itself confirms that it covers albums, not singles; therefore, unlike a singles chart, the R&B Chart simply is not probative of the popularity or dissemination of any individual songs on the albums it lists.

In addition, each of the wide dissemination cases cited in the Order confirms that the Album's fleeting, one-week position low on the R&B Chart should not have played any role in the Court's decision. Those cases involved findings of wide dissemination based on the sustained popularity of the <u>specific songs at issue</u> as reflected in their respective chart histories, not the dissemination of the albums on which they appeared. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir. 1983) (affirming finding of access because the defendant songwriter <u>admitted</u> that he had heard plaintiff's song, and the "<u>song</u> was number one on the Billboard charts in the United States for five weeks . . . and . . . one of the 'Top Thirty Hits' in England for seven weeks") (emphasis added); *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 988 F. Supp. 289, 293 (S.D.N.Y. 1997) ("The [plaintiff's] <u>song</u>'s widespread dissemination and popularity, evidenced by its top five ranking as a country hit at the time [defendant] conceived and approved its ad campaign,

1  demonstrates that defendant had ample opportunity to see or hear the [plaintiff's]
2  lyrics.") (emphasis added), *aff'd,* 155 F.3d 140 (2d Cir. 1998); *see also Three Boys*,
3  212 F.3d at 483-84 (although plaintiff's <u>song</u> "never topped the Billboard charts or
4  even made the top 100 for a single week," jury's access finding was proper in view
5  of the evidence that the <u>song</u> "was played on the radio and television for a few
6  weeks" in the cities where the defendant songwriters lived and one of the songwriters
7  admitted that he was a "huge fan" of and grew up listening to the group that recorded
8  the song and owned all of their music).  <u>By contrast, Plaintiff failed to adduce – and
9  the Court did not rely upon or take judicial notice of – any chart history for *Reasons*
10 or any other evidence of the song's dissemination or popularity</u>.  Using the Album's
11 chart history to infer that *Reasons* was widely disseminated is impermissible because
12 such an inference is necessarily speculative and conjectural.  *See Three Boys*, 212
13 F.3d at 482 ("Access may not be inferred through mere speculation or conjecture.")
14 (internal quotations & citation omitted).

15      Further, although the Order acknowledged that the Album's chart history "is
16 weaker than other cases finding access through dissemination," Order at 21, in fact,
17 nothing here comes close to those cases in which the actual songs at issue enjoyed
18 tremendous visibility at the top of the charts for weeks.  The most that can be said of
19 *Reasons* is that it was on an album that, for just one week, reached number 32 of the
20 R&B Chart and number 198 of the Billboard 200 Chart.  The cases relying upon the
21 popularity and dissemination of a single that sustains itself at the top of the singles
22 charts cannot reasonably be compared or analogized to what amounts to a random
23 and unproven song buried on an album that briefly appears at number 32 or 198 for a
24 single week. *See Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th
25 Cir. 2009) ("To prove access, a plaintiff must show a reasonable possibility, not
26 merely a bare possibility, that an alleged infringer had the chance to view the
27 protected work.") (citation omitted); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815,
28 824 (C.D. Cal. 2010) ("'In order to support a claim of access, a plaintiff must offer

1  significant, affirmative and probative evidence.'") (quoting *Jorgensen v. Epic/Sony*
2  *Records*, 351 F.3d 46, 51 (2d Cir. 2003)) (other quotations & citations omitted).
3  　　　　Third, the radio airplay report annexed to the accompanying Declaration of
4  Adam Foster conclusively demonstrates that, as Plaintiff admitted (*see* Defendants
5  Moving Br. 5-6; Defendants' Reply Br. 17), *Reasons* was neither popular nor widely
6  disseminated.  The radio airplay report shows that *Reasons* was played on the radio
7  just three times – twice in Chattanooga, Tennessee on May 18, 1999 and once in
8  Denver, Colorado on September 23, 1999.  The fact that the song had virtually no
9  radio airplay forecloses any inference that it was widely disseminated, let alone
10 remotely popular.  It also reinforces why the Court's reliance on the Album's chart
11 position was clear error.
12 　　　　Fourth, the Court's reliance on *Three Boys*' wide dissemination and
13 subconscious copying findings to support its wide dissemination holding constitutes
14 clear error.  *See* Order at 22 (citing *Three Boys*, 212 F.3d at 483-85).  In *Three Boys*,
15 the Ninth Circuit upheld the jury's findings regarding access because (1) the song at
16 issue, "Love Is A Wonderful Thing" by the Isley Brothers, had been played on the
17 radio and television in the cities where the defendant songwriters lived at the time;
18 (2) one of the defendant songwriters admitted that he grew up listening to and was a
19 "huge fan" of the Isley Brothers and owned all of their music; and (3) while writing
20 his song, the same songwriter asked his co-writer if they were copying the Marvin
21 Gaye song "Some Kind Of Wonderful," indicating that he "believed that they may
22 have been copying someone else's song." *See Three Boys*, 212 F.3d at 483-84.
23 Plaintiff did not come forth with any such evidence here.  To the contrary, (1) the
24 incontrovertible facts show that *Reasons* had virtually no radio play at all – and none
25 in any city where the songwriter Defendants were living when the song was played
26 on the radio (*see* Raymond's Am. Resps. to Interrogs. (Dkt. No. 234, Exh. F) No. 5;
27 Dupri's Am. Resps. to Interrogs. (Dkt. No. 234, Exh. G) No. 5; Cox's Am. Resps. to
28 Interrogs. (Dkt. No. 234, Exh. H) No. 5); (2) the record is devoid of any evidence

1  that *Reasons* was played on television; and (3) there is no evidence whatsoever – let
2  alone any acknowledgment by any of the songwriter Defendants – that they had
3  heard or owned any music by, or were fans of, Reel Tight, or that they believed that
4  they may have copied another song when they wrote *Burn*. The Order, thus, relies
5  on nothing more than a "bare possibility" of access, and, as such, actually runs
6  counter to *Three Boys*. *See id.* at 482 ("We have defined reasonable access as more
7  than a 'bare possibility.'").

   Fifth, the Order's reliance on the statement that "defendants testified that they
9  have heard hundreds of thousands of songs from a variety of artists over the years"
10 also was erroneous. *See* Order at 22 (citing Dupri Depo. at 60:17-61:15; Cox. Depo.
11 at 65:3-18). Dupri testified that he has heard over a hundred thousand songs "over
12 the course of [his] life," not that he has heard "hundreds of thousands of songs"
13 (Dupri Depo. (Dkt. No. 234, Exh. B) at 60:17-23); Cox testified that he did not know
14 how many songs he had heard (Cox. Depo. (Dkt. No. 234, Exh. C) at 63:5-64:22);
15 and Raymond did not testify regarding this issue at all. Apart from these factual
16 inaccuracies, the testimony at issue (and the underlying questions) spans Dupri's
17 lifetime and, thus, is not limited to the four-year period between the Album's (and
18 *Reasons*') release in 1999 and *Burn*'s creation in 2003 – the only time period that is
19 relevant to access. Even assuming that the songwriter Defendants testified in the
20 manner suggested by the Order (and they did not), access still would be wholly
21 speculative because Plaintiff adduced no evidence whatsoever concerning *Reasons*'
22 dissemination or popularity, and because the incontrovertible facts confirm that the
23 song had virtually no radio airplay at all – and none in any city where any of the
24 songwriter Defendants lived at the time. *See Three Boys* 212 F.3d at 482 ("Access
25 may not be inferred through mere speculation or conjecture.").
26 / / /
27 / / /
28 / / /

## 2. The Court Committed Clear Error By Holding That Plaintiff's Third Party Intermediary Evidence Created A Genuine Issue Of Material Fact On Access

Defendants established in their summary judgment papers – and the Court agreed – that Plaintiff failed to demonstrate any collaboration between the purported third-party intermediary, Warren Griffin III ("Warren G"), and Dupri and Raymond based on various compilation albums featuring separate songs by them. Order at 19. But the Court nevertheless found that (1) "such evidence tends to establish that Plaintiff, Warren G and defendants run in the same musical circles," *id.* (citing *Bernal v. Paradigm Talent and Literary Agency*, 2010 WL 6397587, at *7 (C.D. Cal. Feb. 22, 2010); and (2) Warren G and Dupri supposedly had a "relationship" prior to *Reasons* that continued after the song's creation, which "supports Plaintiff's argument that Warren G was 'in a position to transmit the Plaintiff's work to Dupri.'" *Id.* at 19 (quoting *Gable*, 727 F. Supp. 2d at 826). Based on these findings, the Court held that Plaintiff established a genuine issue of material fact on the issue of third-party intermediary access. This holding constitutes clear error because it fails to take into account material facts presented to the Court and is the result of a manifest misapplication of settled law.

First, the Order made no attempt to address or apply the leading case on third-party intermediary access, *Meta-Film Assocs., Inc. v. MCA Inc.*, which requires evidence that the purported intermediary either "was a supervisor with responsibility for the defendant's project, was part of the same work unit as the copier, or contributed creative ideas or material to the defendant's work." 586 F. Supp. 1346, 1355-56 (C.D. Cal. 1984); *accord Gable*, 727 F. Supp. 2d at 826; *Bernal*, 2010 WL 6397587, at *7. <u>Once again, Plaintiff adduced no evidence to meet his burden on these issues. To the contrary, the undisputed facts confirm that Warren G played no such roles in connection with *Burn*</u>. (Raymond Depo. (Dkt. No. 234, Exh. A) at 34:12-14, 82:4-6; Dupri Depo. at 25:16-27:16; Raymond's Am. Resps. to Interrogs. Nos. 4, 7, 9-10, 13; Dupri's Am. Resps. to Interrogs. Nos. 4, 9-10, 13; Cox's Am.

1  Resps. to Interrogs. Nos. 3(f), 4, 7, 9-10, 13, Warren G Reply Decl. (Dkt. No. 242-
2  14) ¶¶ 16-17)  Thus, under *Meta-Film*, Plaintiff has failed to create a genuine issue
3  of material fact that the songwriter Defendants had access to *Reasons* through
4  Warren G.  This alone warrants reconsideration of the Court's third-party
5  intermediary access holding.

6    <u>Second</u>, the Court committed clear error by basing its third-party intermediary
7  access holding on the notion that "Plaintiff, Warren G and defendants run in the
8  same musical circles."  As a threshold matter, bare "access by association" theories
9  are contrary to law because they are based on sheer speculation.  *See Jorgensen v.*
10 *Careers BMG Music Publ'g*, 2002 WL 1492123, at *4 (S.D.N.Y. July 11, 2002)
11 ("Plaintiff's allegations that the writers of [the allegedly infringing song] and the
12 writers of other hit songs allegedly copied his work simply because they work and
13 live in the same environment are wholly speculative."); *see also Three Boys*, 212
14 F.3d at 482 ("Access may not be inferred through mere speculation or conjecture.").

15   In addition, the language in *Meta-Film* that *Bernal* quoted and upon which the
16 Order relied – namely, that "dealings between the plaintiff and the intermediary and
17 between the intermediary and the alleged copier must involve some overlap in
18 subject matter to permit an inference of access" – does not apply here.  *See* Order at
19 19 (citing *Bernal*, 2010 WL 6397587, at *7 (quoting *Meta-Film*, 586 F. Supp. at
20 1355-56)).  As *Meta-Film* makes clear, "overlap in subject matter" means that the
21 intermediary must have some connection to <u>both</u> the allegedly infringed work and
22 the allegedly infringing work; it does not mean that the works involve the same
23 generic subject matter, *e.g.*, music, motion pictures or television shows.  *See Meta-*
24 *Film*, 586 F. Supp. at 1358-59 (no third-party intermediary access even though
25 movie director received plaintiff's screenplay for *Frat Rats* (the allegedly infringed
26 work), was under contract with and had an office at studio that released *Animal*
27 *House* (the allegedly infringing film) and had several meetings with the studio
28 executive responsible for bringing in the film, because director's dealings with studio

were limited to his own movie and had nothing to do with *Frat Rats* or *Animal House*); *see also Gable*, 727 F. Supp. 2d at 826 (even assuming intermediary received plaintiff's screenplay, plaintiff's third-party intermediary access theory fails as a matter of law, in part, because he adduced no evidence that intermediary and agent whose client wrote allegedly infringing television show ever discussed the screenplay or show in their various meetings); *Hofmann v. Pressman Toy Corp.*, 790 F. Supp. 498, 507 (D.N.J. 1990) (no overlapping subject matter sufficient for third-party intermediary access because "defendants' evidence, which plaintiff does not contradict, shows that defendants' limited dealings with [intermediary] were wholly unrelated to plaintiff's dealings with her"). <u>Plaintiff failed to adduce any evidence remotely suggesting that Warren G ever discussed *Reasons* or *Burn* with any of the songwriter Defendants – let alone gave them a copy of *Reasons* or the Album or had anything to do with *Burn*'s creation.</u>  To the contrary, the undisputed facts confirm that he did not. (Raymond Depo. at 34:12-14, 82:4-6; Dupri Depo. at 59:23-60:16, Raymond's Am. Resps. to Interrogs. Nos. 4, 7, 9-10, 13; Dupri's Am. Resps. to Interrogs. Nos. 4, 9-10, 13; Cox's Am. Resps. to Interrogs. Nos. 3(f), 4, 7, 9-10, 13; Warren G Reply Decl. ¶¶ 16-17)  The undisputed evidence, therefore, shows that there was no "overlap in subject matter," as required by *Meta-Film* and its progeny.

Further, the Order's ruling that a genuine issue of material fact exists because Plaintiff, Warren G and the songwriter Defendants supposedly "run in the same musical circles" is clearly erroneous because it is based on speculation and conjecture that artists in the same musical genre know and work closely with each other, not upon actual evidence that Warren G and the songwriter Defendants actually did so during the relevant time period. <u>Indeed, at most, the evidence shows that Plaintiff and the songwriter Defendants have never met; that Warren G and Cox have never met; that Plaintiff briefly met Warren G twice; that Raymond met Warren G on just one or two occasions; and that, despite the fact that they wrote and recorded a portion of a verse for one song on each other's albums, Warren G and</u>

<u>Dupri neither worked together nor saw each other in connection with these projects and nothing in the record suggests the two ever had any connection with each other beyond this.</u>[1]  (Raymond Decl. (Dkt. No. 212-34) ¶ 2; Dupri Decl. (Dkt. No. 212-35) ¶ 2; Cox Decl. (Dkt. No. 212-36) ¶ 2; Raymond Depo. at 33:25-34:14, 82:4-6; Dupri Depo. at 25:16-27:16, 33:20-36:2, 60:2-16; Cox Depo. at 49:4-7; Raymond's Am. Resps. to Interrogs. Nos. 4, 7, 9-10, 13; Dupri's Am. Resps. to Interrogs. Nos. 4, 9-10, 13; Cox's Am. Resps. to Interrogs. Nos. 3(f), 4, 7, 9-10, 13; Dupri Reply Decl. (Dkt. No. 242-12) ¶¶ 2-7; Warren G Reply Decl. ¶¶ 2-8)  Against this background, the fact that Plaintiff, Warren G and the songwriter Defendants may have worked in the same genre of music is manifestly insufficient and, at best, provides only a speculative basis for inferring access.  *See Three Boys*, 212 F.3d at 482 ("Access may not be inferred through mere speculation or conjecture.").

<u>Third</u>, the Court committed clear error also by ruling that Warren G was "'in a position to transmit the Plaintiff's work to [Dupri – one of] the creators of the [allegedly] infringing work'" – because Warren G and Dupri supposedly had a "relationship" and were "in contact" before and after *Reasons*' creation.  Order at 19-20 (quoting *Gable,* 727 F. Supp. 2d at 826 (citing *Meta-Film*, 586 F. Supp. at 1355-56)).  This ruling rests on a misreading and improper application of *Gable* and *Meta-Film*.  As those cases make clear, the issue of whether Warren G was "in a position to transmit" *Reasons* to Dupri is not to be considered in a vacuum; rather, it must be analyzed based on the three *Meta-Film* criteria discussed on page 7 above.  *See Gable*, 727 F. Supp. 2d at 828-29; *Meta-Film*, 586 F. Supp. at 1355-56.  The Court, therefore, was required to analyze those criteria in order to determine whether Warren G occupied such a position.  But the Court did not do so.  Had the Court conducted the required analysis, the uncontroverted evidence – as discussed on page

---

[1] The Order states that "Dupri <u>performed</u> the song 'Havin' Things' on Warren G's 1999 album 'I Want It All.'"  Order at 20 (emphasis added).  However, the uncontroverted evidence confirms that Dupri performed just half of a single verse on *Havin' Things* and did so separately from Warren G.  (Dupri Reply Decl. ¶¶ 5-7; Warren G Reply Decl. ¶¶ 2-4; Dupri Depo. at 34:9-35:10)

7 above – conclusively would have demonstrated that <u>Warren G meets none of the</u> <u>*Meta-Film* criteria</u>, and therefore cannot be considered a third-party intermediary. In short, like the purported intermediaries in *Gable* and *Meta-Film*, the record in this case is devoid of any evidence that Warren G played any role whatsoever in *Burn*'s creation, let alone discussed this song or *Reasons* with the songwriter Defendants.

Finally, putting aside that Plaintiff failed to adduce any evidence either rebutting Warren G's unequivocal testimony that he did not give Dupri – or the other songwriter Defendants – a copy of *Reasons* or the Album (*see* Warren G Decl. (Dkt. No. 212-37) ¶ 2) or suggesting that this testimony is untruthful, the Court erred in finding that Warren G and Dupri had a "relationship" before and after *Reasons*' creation and were "in contact" after the song's creation. No evidence supports this finding. Instead, (1) Defendants presented uncontroverted evidence that Warren G and Dupri had <u>no</u> contact with each other in connection with the two songs upon which the finding is based and did not have an ongoing personal or professional relationship with each other (Dupri Reply Decl. ¶¶ 2-7; Warren G Reply Decl. ¶¶ 2-7); and (2) that Plaintiff presented no evidence that Warren G and Dupri saw or even spoke to each other <u>at any time</u> after *Reasons*' creation either in connection with the song *Havin' Things* or otherwise. Thus, it is entirely speculative, and contrary to the evidence, that Dupri had access to *Reasons* through Warren G. *See Three Boys*, 212 F.3d at 482 ("Access may not be inferred through mere speculation or conjecture.").

**B.     The Court Should Reconsider Its Extrinsic Test Holding**

Defendants established in their summary judgment papers – including through the testimony of Plaintiff's witness, Saadi – that the constituent musical elements of *Reasons* and *Burn*, and, therefore, the combination of elements that Plaintiff has placed at issue, are substantially different. The Court did not analyze – or even acknowledge – the extensive evidence that Defendants adduced on this key issue, but rather merely held that "Saadi's expert testimony is sufficient to raise a genuine issue

1  of material fact as to substantial and striking similarity." Order at 26. This was clear
2  error.
3       First, irrespective of whether the Court rejects Defendants' arguments that the
4  vast majority of the elements at issue are unprotectable ideas and that Saadi ignored
5  critical differences in other aspects of the compositions, *id.* at 26-29, the Court was
6  still required to analyze the evidence concerning the songs' expression of those
7  elements to determine whether a material issue of fact regarding substantial
8  similarity exists. *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003)
9  (emphasizing "[t]he district court['s] extensive analysis of the alleged similarities in
10 expressive elements between [the works at issue]" in its summary judgment
11 decision); *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1109 (C.D. Cal. 2005) ("It is
12 not sufficient that the ideas embodied in two works be similar. Rather, the trier of
13 fact must determine 'whether there is substantial similarity in the expressions of the
14 ideas so as to constitute infringement.'") (quoting *Sid & Marty Krofft Tel. Prods. v.
15 McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977)); *see also Swirsky v. Carey*,
16 376 F.3d 841, 845 & n.4 (9th Cir. 2004)) ("Although the extrinsic test examines the
17 similarity of ideas and expression, . . . ideas by themselves are not subject to
18 copyright protection; only the *expression* of ideas is."; "it is essential to distinguish
19 between the protected and unprotected material in a plaintiff's work") (citation
20 omitted); *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 n.9 (11th Cir. 2002) ("We
21 have cautioned trial courts in this circuit not to be swayed by the fact that two works
22 embody similar or even identical ideas.") (quotation marks and citations omitted); 4
23 Nimmer on Copyright § 13.03[B][2] ("When similar works resemble each other only
24 in those unprotected aspects, then defendant prevails"). The Court committed clear
25 error by not conducting such an analysis. Had it done so, the uncontroverted
26 evidence adduced by Defendants would have compelled the conclusion that the
27 songs are neither substantially nor strikingly similar.
28

For example, the Court relied on Saadi's opinion that the songs at issue "contain a substantially similar 18-bar introduction" to support its finding that Plaintiff had shown "that *Burn* is similar to a substantial portion of protectable elements from *Reasons*." Order at 29 (citing *Swirsky*, 376 F.3d at 849; Saadi Report ¶¶ 30-34). Yet it is manifestly clear that the Order did not address any of the evidence in the record concerning the songs' expression of the elements in the introduction that Plaintiff placed in issue. Although it was not their burden to do so, Defendants demonstrated that the songs express every one of those elements differently. *See* Ferrara Report (Dkt. 273) ¶¶ 9-29; *see also* Ferrara Declaration (Dkt. 242-9) ¶¶ 26-30; Ferrara Report (Dkt. 212-33) ¶¶ 15, 16.A.-D., F. Saadi admitted as much at his deposition. *See* Defendants' Supp. Mem. (Dkt. 278) at 3-4. Plaintiff, on the other hand, adduced no evidence whatsoever regarding the songs' expression of the elements at issue – let alone attempt to show substantial or striking similarity in any such expression. Accordingly, the uncontroverted evidence that Defendants produced and that Saadi confirmed to be true forecloses as a matter of law any inference that the <u>expression</u> in the introductions is either substantially or strikingly similar. *See Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625-29 (9th Cir. 2010) (even though the works at issue may contain similar ideas, the different manner in which they are expressed forecloses a finding of substantial similarity); *Swirsky*, 376 F.3d at 845 n.4; *Stewart*, 574 F. Supp. 2d at 1109.

<u>Second</u>, the Court committed clear error also by not analyzing the specific points that Dr. Ferrara raised about Saadi or, more importantly, the substance of Dr. Ferrara's reports and Declaration – the principal evidence that Defendants adduced to negate any inference of substantial similarity – on the erroneous ground that "all plaintiff must do to defeat summary judgment is provide 'indicia of a sufficient disagreement concerning the substantial similarity of the two works.'" Order at 26 (quoting *Swirsky*, 376 F.3d at 846) (other citation omitted). The Court's reasoning in

this regard was based on a clear misreading and misapplication of *Swirsky*. As noted in *Gable*:

> In *Swirsky*, the Ninth Circuit was discussing the general summary judgment standard, not the testimony of experts, when it noted that if plaintiff "presented indicia of a sufficient disagreement concerning the substantial similarity of [the] two works, then the case must be submitted to a trier of fact." *Id.* at 844. *Swirsky* was quoting *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992), which in turn quoted from *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 . . . (1986), a seminal Supreme Court case setting out the standard for ruling on summary judgment motions generally. Thus, when read in context, the portion of *Swirsky* quoted above simply restates the standard for evaluating a summary judgment motion – that is, if the evidence presented indicates that reasonable minds could differ as to which party should prevail, the case must go to the jury. However, where no reasonable jury could conclude that the two works are substantially similar, summary judgment on the issue of substantial similarity is appropriate, notwithstanding dueling expert reports.

727 F. Supp. 2d at 837 n.19 (citations omitted). The Order, therefore, erred in using the mere fact of disagreement between Saadi and Dr. Ferrara as a basis for denying summary judgment. Instead, the Order was required to analyze the evidence that <u>each</u> of them presented to determine whether a reasonably jury could find for Plaintiff. Once again, had the Court analyzed the evidence presented by Defendants, it would have had no choice but to grant Defendants' motion.

For all of these reasons, the Court should reconsider its extrinsic test holding.

### C. The Court Should Reconsider Its Copyright Ownership Holding

Defendants established in their summary judgment papers – and the Court agreed – that although Plaintiff now claims sole authorship of *Reasons*, he has known since the end of 1998 that the Album's credits listed him, his brother and the four members of Reel Tight as the song's co-writers. The Court also acknowledged that Plaintiff elected not to challenge the other writers' authorship claims. In addition, Defendants demonstrated that (*see* Defs.' Mem. in Supp. of Mot. Summ. J. (Dkt. No. 212-1) at 16-17), irrespective of any issues of fact concerning the original

authorship or division of ownership of the song's copyright, (1) the Album's credits constituted a clear repudiation – in 1998 – of Plaintiff's claim to sole authorship and ownership of the copyright under Ninth Circuit law; and (2) Plaintiff's decision not to file suit before the end of 2001 prohibits him from challenging the Reel Tight members' joint authorship of *Reasons* and resulting joint ownership of the song's copyright. *See Aalmuhammed v. Lee*, 202 F.3d 1227, 1230-31 (9th Cir. 2000) (credits appearing with film's release that identified plaintiff as an "Islamic technical consultant," not an author, triggered his obligation to commence copyright ownership action within three years or lose the right to do so because they "plainly and expressly repudiated authorship"); *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996) ("[C]laims of ownership, as distinct from claims of infringement, accrue when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation.").

Notwithstanding Defendants' uncontroverted showing that Plaintiff's claim to sole ownership is barred as a matter of law, the Court did not address the statute of limitations issue, holding instead that the record established "a genuine issue of material fact as to Plaintiff's ownership share in the *Reasons* copyright." Order at 8. Even if the precise percentage of Plaintiff's share of the *Reasons* copyright is an open question for the jury, that has no bearing on the undisputed facts and established law confirming that the statute of limitations forecloses Plaintiff from claiming he alone owns the *Reasons* copyright. The Court's failure to consider or address this fundamental point requires reconsideration of its copyright ownership holding.

## IV. CONCLUSION

For all of the reasons set forth above and in their prior filings, Defendants respectfully request that the Court reconsider its holdings on wide dissemination and third-party intermediary access, the extrinsic test and copyright ownership, and grant them summary judgment on Plaintiff's copyright infringement claim or, in the

alternative, partial summary judgment on the issue(s) of access, substantial similarity strikingly similarity and/or Plaintiff's co-ownership of *Reasons* with the four members of Reel Tight.

DATED: September 16, 2011 MANATT, PHELPS & PHILLIPS, LLP

By: /S/
ROBERT A. JACOBS
EMIL PETROSSIAN

*Attorneys for Defendants*
Usher Raymond IV, Jermaine Dupri, EMI April Music Inc., UR-IV Music, Inc., So So Def Productions, Inc. (sued erroneously as "So So Def Recordings, Inc."), W.B.M. Music Corp., Bryan Michael Cox and Babyboys Little Publishing Company